IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————————

HENRY WATKINS                    :
                                 :
          Plaintiff,             :
                                 :
     v.                          :    NO. 02-CV-2881
                                 :
PENNSYLVANIA BOARD OF PROBATION  :
& PAROLE, EDWARD JONES, AND      :
MICHAEL BUKATA                   :
                                 :
          Defendants.            :

—————————————————————————

## PLAINTIFF S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF S AMENDED COMPLAINT

Plaintiff, Henry Watkins, respectfully submits this Memorandum of Law in opposition to defendants Motion to Dismiss plaintiff s Amended Complaint.

STATEMENT OF FACTS

This case arises from defendants systemic and continuous pattern of discrimination and retaliation against African American board agents.  The facts as alleged in the Complaint are assumed true for the purpose of a Motion to Dismiss.

Plaintiff, an African American, was hired as a Parole Board Agent on or about October 13, 1973.  (Complaint ¶5).  He worked at the Board until August, 2001, when he was fired.  (Complaint ¶¶5,23).

Plaintiff was promoted to the position of Supervisor in 1998

after a settlement of a previous discrimination case  (Complaint
¶5), after which he suffered discrimination.  Plaintiff received
 satisfactory , if not better, evaluations from immediate
supervisor Daniel Solla, until he and other African American
employees settled the suit on or about May 10, 1995.  (Complaint
¶6).  As part of the settlement, the parties were required to
pursue an alternative dispute resolution in response to
complaints of discrimination and retaliation and promote
plaintiff to supervisor.  (Complaint ¶7).  Defendants suborned
this provision by refusing to implement it.  (Complaint ¶7).

     Defendant Bukata was plaintiff  s immediate supervisor in the
years 1999 through 2001.  (Complaint ¶8).  He repeatedly and
continually discriminated against plaintiff because of his race,
as part of a continuing pattern and practice of discrimination,
in order to block promotion of African American employees, such
as plaintiff, beyond supervisor and in retaliation for the
settlement plaintiff reached with defendant Parole Board in 1995.
(Complaint ¶8).  Defendant Bukata denied plaintiff the
opportunity to correct any alleged job deficiencies, as plaintiff
only first learned of any alleged deficiencies when he received
his annual performance evaluations, contrary to Board policy.
(Complaint ¶10).  Defendant Bukata wrote unfair, negative
performance evaluations regarding plaintiff in 2000 and 2001.

(Complaint ¶9).  In those evaluations, defendants discriminatorily only included alleged negative aspects of plaintiff s job performance in his job evaluations, although he was required to include all negative and positive aspects. (Complaint ¶11).  For example, Bukata neglected to mention plaintiff s receipt of a distinguished service award for working on the Fatherhood Committee in 1999.  Id.  As further example, at least once per month, plaintiff gave lectures regarding probation and parole issues as part of the DOWP Program (Drug Offender Work Program).  Id.  Bukata was aware of plaintiff s community service, but failed to include it in his job evaluation.  Id. The adverse evaluations were part of, and were used to further, a conspiracy to establish an unfair, discriminatory record for plaintiff.  Id. at ¶ 12.  Furthermore, despite Board policy requiring Bukata to meet with plaintiff to review his performance evaluations and other performance issues, Bukata never did so. Id. at ¶ 13.  Plaintiff requested meetings with defendant Jones, Bukata s immediate supervisor, to discuss his performance evaluations.  Id. at ¶ 14.  Jones refused to discuss the matter and merely directed plaintiff to discuss his concerns with his immediate supervisor, defendant Bukata, i.e. the person with whom he had problems.  Id.

In November, 2000, plaintiff finally met with Jones.    Id.

at ¶ 15.  Defendant Bukata was also present at that meeting.
Id.  Plaintiff was not given an opportunity to express his
concerns.  Id.  Without hearing plaintiff  s side of the story,
Jones merely concurred with Bukata  s assessment. Id.
Accordingly, plaintiff filed a grievance regarding the foregoing
discrimination.  Id. at ¶ 16.  At the Hearing, plaintiff met with
Thomas Marshall, the Board  s Labor Relations Specialist. Id.
Like Jones, Marshall merely directed plaintiff to discuss the
matter with Bukata, the person with whom he had the problems.
Id.

       In further retaliation for the prior complaints and the
settlement, defendants assigned more cases to plaintiff  s Unit
than White supervisors.  Id. at ¶ 17.  Plaintiff complained to
defendant Bukata about the disparate number of cases assigned to
his unit.  Id. at ¶ 18.  In retaliation for plaintiff  s
complaint, Bukata refused to assign plaintiff a secretary for
approximately one year.  Id.  Despite his repeated requests for
more clerical staff, clerical assistance was not provided.  Id.
at ¶ 20.  As a result, plaintiff was forced to perform his own
duties, as well as the clerical duties.  Id. at ¶ 19.  White
supervisors, on the other hand, received clerical support.  Id.
at ¶ 21.  In January, 2001, Bukata made an offer to plaintiff of
secretarial assistance, but this offer was a sham.  Id. at ¶ 22.

First, the secretary was located too far away to provide any assistance to plaintiff.  Id.  Second, she was already busy with Bukata s assignments, and expressed reluctance to assist plaintiff, as he was not her supervisor.  Id.  As a result, her services to plaintiff were not meaningful, as intended by Jones and Bukata.  Id.

In further pursuit of defendants  discriminatory and retaliatory conduct: defendant Bukata never addressed concerns about plaintiff s performance informally, but would impose disciplinary action, including written and verbal warnings, and eventually a suspension, thereby denying plaintiff any opportunity to correct the alleged inadequacies until it was too late to avoid an adverse record.  Id. at ¶ 24(a).  Defendant Bukata did not provide plaintiff with the same one-on-one supervision White supervisors benefitted from.  Id. at ¶ 24(b). Further, defendant Bukata assigned more cases to African American supervisors than White supervisors.  Id. at ¶ 24(d).

Defendants  continuous pattern and practice of harassing and retaliating against African American employees has led to numerous settlements of suits against the Board.  Id. at ¶ 25. Defendants  harassment, discrimination, and retaliation was conducted with malice and reckless disregard for plaintiff s rights.  Id. at ¶ 26.

PROCEDURAL HISTORY

Plaintiff filed suit in the Philadelphia Court of Common Pleas on April 18, 2002.  On May 14, 2002, defendants removed this action to this Court.

On May 29, 2002, defendants moved to dismiss plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(b)(6).  On June 10, 2002, defendants filed a Supplemental Memorandum of Law.  In accordance with the Stipulation of Counsel, plaintiff, having received a Right to Sue Letter from the EEOC after filing his Complaint, filed an Amended Complaint on July 29, 2002.  On August 12, 2002, defendants moved to dismiss plaintiff's Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6).  Plaintiff hereby responds to defendants' Motion.

ARGUMENT

I.    **STANDARD OF REVIEW**

In moving to dismiss for failure to state a claim, the defendants have a substantial burden.

Under the federal notice pleading standard, a complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).

In making a 12(b)(6) determination, the Court must accept as true all allegations in the Complaint and all inferences that

can be drawn therefrom.  See Oshiver, Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir. 1994); Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989); Woolf v. 1416 Spruce Associates, L.P., 68 F.Supp.2d 569 (E.D.Pa. 1999).  A motion to dismiss should be granted only if  it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.   Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); See Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C., 1998 WL 723529, *1 (E.D.Pa. Oct. 13, 1998).  The Court must construe the pleadings in the light most favorable to the plaintiff.  Rocks, 868 F.2d at 645; Rogin v. Bensalem Township, 616 F.2d 680, 684 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981).  Thus, the defendants can succeed only if they can show that even if all the facts alleged in the Complaint were true, including all inferences, there would still be no valid claim as a matter of law.  If the complaint fails to provide sufficient notice of plaintiff  s claims and the grounds upon which they rest, a defendant can move for a more definitive statement under Fed.R.Civ.P. 12(e) before responding.

As will be shown below, the defendants do not meet the difficult burden imposed by Rule 12(b)(6).

II.   **<u>PLAINTIFF  S SECTION 1981 CLAIM IS SUFFICIENT</u>**

   A.  **Section 1983 Is Not The Exclusive Remedy Against A State
       in   Monell   Cases.**

   Citing <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 733

(1989), defendants contend that   42 U.S.C. Section 1983 provides

the exclusive remedy in damages against state governmental units

for the rights guaranteed by Section 1981.    (Defs  Mem. at 5).

However, defendants misuse <u>Jett</u>, which is a non-practice, non-

Monell case, i.e. respondeat superior liability.  <u>Jett</u> is not

this case, and the <u>Jett</u> rule is not applicable.

   Plaintiff, here, alleges an official policy and custom,

under the  Monell  rule.  Plaintiff alleges that defendants

perpetuate the practices at issue in this Court in <u>Williams v.</u>

<u>Parole Board</u>, No. 93-CV-5696, and which reflect Governor  s Office

of Administration Reports documenting a policy of discrimination

and retaliation based on race.  They are covered by <u>Monell v.</u>

<u>Dept. of Social Services</u>, 436 U.S. 658 (1978).  <u>Jett</u> specifically

upholds the availability of Section 1981 in such  Monell  cases,

and only rejected it for respondent superior liability.  <u>See</u>

<u>Jackson v. Coatesville Areas School District</u>, 2000 WL 1185375

(E.D.Pa. Aug. 21, 2000) (Dubois, J.).

   Moreover, plaintiff submits that the Ninth Circuit was right

in <u>Federation of African American Contractors v. Oakland</u>, 96 F.3d

1204 (9th Cir. 1996), that the 1991 amendment to Section 1981 overruled the <u>Jett</u> rule. Defendants fail to discuss the effect of the Civil Rights Act of 1991 on <u>Jett</u>. The Act provides as follows: "[t]he rights protected by this section are protected against impairment by non-governmental discrimination **and impairment under color of State law.**" 42 U.S.C. Sec. 1981(c) (emphasis added). Accordingly, the Ninth Circuit held that  the Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, and thus statutorily overrules <u>Jett</u>  s holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981. <u>Id.</u> Although the Third Circuit has not decided the issue, if it were necessary to reach this question, plaintiff believes this Circuit would agree. <u>See contra,</u> <u>Butts v. County of Volusia</u>, 222 F.3d 891 (11th Cir. 2000); <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995).

In <u>Johnakin v. Philadelphia</u>, 1996 WL 18821 (E.D.Pa. Jan. 18, 1998), Judge Reed discussed the issue, but did not decide the issue. Judge Padova in <u>Poli v. SEPTA</u>, 1998 WL 405052 *12 (E.D.Pa. July 7, 1998), held that Section 1983 is the exclusive remedy for Section 1981 claims. That holding related, of course, only to municipalities and individual defendants acting in their

official capacities, and only to respondeat superior claims, not
<u>Monell</u> claims.

Thus, for the foregoing reasons, Section 1983 is not the
exclusive remedy against the state or state actors.[1]

**B.    Plaintiff Has Alleged An Official Policy and Custom.**

Defendants further contend that plaintiff has not alleged a
violation by custom or policy (Defs  Mem. at 4), i.e. a Monell
claim.  Defendants are wrong.

Plaintiff has alleged an official policy and custom, under
the Monell rule.  Plaintiff alleges that defendants implemented
and executed an official custom and policy of discriminatory
practices at the Board.  (Complaint ¶ 25).  That the policy is
not  officially adopted  is immaterial, contrary to defendants
contention (Defs  Mem. at 4).   Even in the absence of formal
policymaking activity, an  official policy  may be inferred  from
informal acts or omissions of supervisory municipal officials...
<u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 671 (3d Cir. 1988)

---

[1] Plaintiff is aware of <u>Meachum v. Temple University</u>, 42
F.Supp.2d 533 (E.D.Pa. 1999), but did not discuss the case above
because Judge Pollak did not decide the issue whether the 1991
amendment to 42 U.S.C. § 1981 abrogates <u>Jett v. Dallas Indep.
Sch. Dist.</u>, 491 U.S. 701, 733 (1989), even in regard to non-
Monell suits against governments.  Plaintiff is calling it to the
Court s attention, however, because it identifies all Eastern
District cases dealing with the effect of Section 1981 in non-
Monell cases against governmental bodies.  42 F.Supp.2d at 541,
fn 9.

10

(citations omitted), *cert. denied*, 489 U.S. 1065 (1989).  Here, plaintiff alleges that defendants engaged in a continuing pattern and practice of harassing Black employees and Whites for being sympathetic to Black employees, and defendants harassed plaintiff in accordance with this pattern and practice.  (Complaint ¶ 25). The pattern and practice has led to numerous settlements of suits against the Board in at least thirteen cases, including those of Henry Williams, et al.,  James Burton, Calvin Ogletree, and Joseph Scott.

This pleading meets the federal pleading test.  Under the federal notice pleading standard, a complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  Because the Federal Rules require only notice pleading, the complaint need only contain  a short and plain statement of the claim showing that the pleader is entitled to relief.   Fed.R.Civ.P. 8(a).  Under this liberal pleading standard, it is clear that plaintiff has provided defendants with fair notice and plaintiff has alleged facts under which relief could be granted.

Therefore, defendants  Motion to Dismiss the Section 1981 claim as to defendant Parole Board should be denied because a claim under Monell is stated or based on the Oakland case, or

both.

### III. PLAINTIFF  S INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS ARE SUFFICIENT.

**A.  Defendants Are Not Entitled to Sovereign Immunity.**

Defendants contend that they are entitled to sovereign immunity. (Defs  Mem. at 5).  However, application of immunity is not appropriate because defendants waived immunity for state law claims when they removed the case to federal court.  <u>Lapides v. Board of Regents of University System of Georgia</u>, 535 U.S. ___ (2002).

Furthermore, defendants are also not entitled to sovereign immunity under 1 Pa.C.S.A. § 2310.  Section 2310, in relevant part, provides as follows:

> [T]he Commonwealth, and its officials and employees **acting within the scope of their duties,** shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.  (emphasis added).

Pennsylvania has adopted Section 228 of the Restatement (Second) of Agency, which defines  scope of employment  as follows:

> (1) [I]t is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

<u>Brumfield v. Sanders</u>, 232 F.3d 376 (3d Cir. 2000) (citing <u>Butler v. Flo-Ron Vending Co.</u>, 557 A.2d 730 (Pa.Super. 1989)).

Clearly, defendants were not acting with the proper scope of their duties when they discriminated and retaliated against plaintiff.  The conduct of defendants Board, Jones and Bukata was not of the kind they were mandated to perform, and not of the kind plaintiff would expect to endure at the workplace.  The Commonwealth and its officials are not immune from suit where they act outside of their mandates.

**B. Plaintiff Has Stated Claims for Intentional and Negligent Infliction of Emotional Distress.**

Defendants contend that plaintiff s emotional distress claims should be dismissed because physical harm has not been alleged.  (Defs  Mem. at 8).  Defendants are wrong.

A plaintiff is not required to allege physical harm at this stage of the proceedings.  <u>Hudson v. Brandywine Hospital</u>, 1999 WL 1240956 (E.D.Pa. Dec. 16, 1999) (  The allegation in the Amended Complaint that [plaintiff] suffered emotional distress as a result of [defendant]'s tortious conduct, (Am.Compl.¶ 49), is sufficient at this time to support her cause of action  for intentional infliction of emotional distress).  Likewise, in <u>Minisalco v. Gordon</u>, 916 F.Supp. 478, 481 (E.D.Pa. 1996), the Court held that plaintiffs have sufficiently alleged a claim for

intentional infliction of emotional distress where plaintiffs
alleged that they suffered from  anxiety, distress, discomfort
and embarrassment  as a result of defendants  action and alleged
that defendants  conduct was  extreme and outrageous  ,
 intentional and reckless  , that it "caused Plaintiffs severe
emotional distress," and that it "constitutes intentional
infliction of emotional distress under the laws of the
Commonwealth of Pennsylvania".  The Court denied a Motion to
Dismiss.  At the summary judgment stage, of course, competent
medical evidence may be required.  <u>Hudson</u>, 1999 WL 1240956.

     Moreover,  [w]here reasonable persons may differ, it is for
the jury to determine whether the conduct is sufficiently extreme
and outrageous so as to result in liability.  <u>Lane v. Cole</u>, 88
F.Supp.2d 402, 406 (E.D.Pa. 2000); <u>See</u> <u>Carter-Herman</u>, 1995 WL
764574 (E.D.Pa. Dec. 21, 1995).

     Here, plaintiff has sufficiently alleged a cause of action
for emotional distress.  To sustain a cause of action for
intentional infliction of emotional distress, plaintiff must
allege that defendants engaged in extreme and outrageous conduct
that caused severe emotional distress.  <u>Taylor v. Albert Einstein</u>
<u>Medical Center</u>, 754 A.2d 650 (Pa. 2000).  Plaintiff alleges that:
The racial discrimination, retaliation and work-related
harassment caused the plaintiff extreme emotional distress, and

although defendants were aware of the distress and his

susceptibility to it, they not only failed to stop the

harassment, but were in large measure responsible for it.

(Complaint ¶35).  He further alleges: The foregoing harassment

conducted caused plaintiff to suffer extreme emotional distress.

Id. at ¶36.  Moreover, he alleges: Defendants   actions were an

intentional infliction of emotional distress, giving rise to a

claim under the tort law of Pennsylvania.  Id. at ¶ 37.

Therefore, defendants   Motion to Dismiss plaintiff  s

emotional distress claims should be denied.

## IV.   <u>**PLAINTIFF  S CONSPIRACY CLAIM IS SUFFICIENT**</u>

Defendants contend that plaintiff has failed to state a

claim for conspiracy because he did not specify an overt act

taken by defendants in furtherance of the conspiracy.  (Defs

Mem. at 9-11).[2]  They are wrong.  Plaintiff has alleged an overt

act.  See Complaint ¶ 44 (  In furtherance of their plans to

discriminate against plaintiff, defendants acted in concert with

each other by discussing and agreeing to the actions that would

be undertaken to discriminate against plaintiff and to terminate

him  ).

_____

[2]In response to defendants   professed uncertainty in
footnote 4 of their Brief as to whether the claim is state or
federal, plaintiff  s conspiracy claim has been brought under
state law.

A civil conspiracy exists where two or more persons combine or agree to do an unlawful act or to use unlawful means. Skipworth v. Lead Industries Association, Inc., 690 A.2d 169, 174 (Pa. 1997); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

Citing Palma v. Borough of Lansdale, 1991 WL 91557, *7 (E.D.Pa. May 28, 1991), defendants further contend that [conspiracy must be alleged with specificity.   (Defs  Mem. at 10).  There is no such requirement.  In Palma, the Court was considering a conspiracy claim under Section 1983, as opposed to the state law claim at issue here.  Furthermore, the issue in that case arose upon a motion for summary judgment, not a motion to dismiss.  The Court found that when a claim is dismissed for want of specificity, the plaintiff should normally be given the right to amend.  Id. at *9.  However, where the issue arises upon a motion for summary judgment, after the parties have conducted discovery, more specificity is required.  Id.  This case, unlike Palma, is not at the summary judgment stage.  Therefore, plaintiff is not required to meet the same level of specificity. However, as the Court noted, where a claim is dismissed for want of specificity,   the plaintiff should normally be given leave to amend.   Id.

Moreover, Robinson v. McCorkle, 462 F.2d 111 (3d Cir. 1972),

also cited by defendants for the proposition that a conspiracy
claim must be alleged with specificity, is also easily
distinguishable.  In that case, the Court held that the plaintiff
did not make a sufficient showing under 42 U.S.C. 1985(3) that he
was denied equal protection under the law.  Here, no such showing
is required, as plaintiff has brought a claim under Pennsylvania
state law.  Likewise, <u>Scott v. Township of Bristol</u>, 1990 WL
178556 (E.D.Pa. Nov. 14, 1990), also cited by defendants,
concerns a 42 U.S.C. Section 1985(3) claim, not a state law
conspiracy claim.

Moreover, plaintiff has sufficiently alleged an overt act in
furtherance of the conspiracy.  Defendants state that plaintiff
bases his conspiracy claim  solely  on defendant Bukata  s
negative performance reviews of him, defendants   failure to
provide him with an adequate forum to express his concerns, and
the disparate caseload.  These actions indeed demonstrate the
overt act taken in furtherance of the conspiracy to treat
plaintiff differently than White employees at the Board, i.e.
discriminate against plaintiff.  These actions were taken in
furtherance of defendants   plan to discriminate against
plaintiff.

Therefore, defendants   Motion should be denied.  In the
alternative, plaintiff requests leave to amend the Complaint

where more specificity is needed.

**V.    <u>PLAINTIFF S TITLE VII CLAIM IS SUFFICIENT</u>**

Plaintiff makes claims under Title VII for discrimination and hostile work environment.  Defendants move to dismiss only certain parts of plaintiff s Title VII claim - those relating to (i) Hostile work environment, (ii) Retaliation; and (iii) all individual liability as to individual defendants Jones and Bukata.  Defendants have not moved to dismiss plaintiff s discrimination claim.  As a result, their motion to dismiss Count V (Title VII) must be denied.  Despite this fact, plaintiff will address defendants arguments below.

**A.    Plaintiff S Hostile Environment Claims.**

Defendants contend that plaintiff s hostile work environment allegations are insufficient.  (Defs  Mem. at 11-14). Defendants are wrong.

The law is that when the workplace is permeated with discriminatory intimidation, ridicule, and insult  that is sufficiently severe or pervasive to alter the conditions of the victim s employment and create an abusive working environment  , Title VII is violated . <u>National Railroad v. Morgan</u>, 122 S.Ct. 2061, 2074 (2002) (quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21  (1993)) (internal citations omitted).  Whether a hostile work environment exists is a  mixed question of law and

fact  . <u>Richardson v. New York State Department of Correctional</u> <u>Service</u>, 180 F.3d 426, 436 (2d Cir. 1999) (quoting <u>GAF Corp. v.</u> <u>Heyman</u>, 724 F.2d 727, 737 (2d Cir. 1983); <u>Jordan v. Clark</u>, 847 F.2d 1368, 1375 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989).  The issue is especially well suited for jury determination.  <u>Richardson</u>, 180 F.3d at 436.

Defendants   conduct, as alleged, was not just offensive. The workplace at the Board was permeated with  discriminatory intimidation, ridicule, and insult.   Unlike the situation in <u>Cronin v. Martindale Andres & Co.</u>, 159 F.Supp.2d 1,7 (E.D.Pa. 2001), cited by defendants (Defs  Mem. at 13), defendants behavior towards plaintiff (and other African American employees) cannot be characterized as an isolated incident, but was pervasive and continuous conduct.  In <u>Cronin</u>, the Court held that the employer s mere exclusion of plaintiff, a female, from a company golf outing in favor of a male employee and a joke made by one employee regarding the number of women allowed to play in the tournament, do not constitute   pervasive and regular   conduct of a hostile work environment.  <u>Id.</u> at 7.

<u>Cronin</u> is far from this case, where the defendants have continually perpetuated and condoned a racially hostile work environment.  The facts here are completely different.  The pattern here against plaintiff is sufficient in itself.  Coupled

with the numerous out of court settlements of racial

discrimination claims, including a settlement with said

plaintiff, and numerous constructive discharges (forced early

retirements) of African American employees, there is clearly

evidence of a hostile work environment.

Walton v. Mental Health Assoc. of Southeastern Pennsylvania,

168 F.3d 661 (3d Cir. 1999), another case cited by defendants

(Defs  Mem. at 13), is also different.  In that case, the Court,

on summary judgment, found that there was a mere  personality

conflict  between the employee and her supervisor. Id. at 667.

Here, at the Motion to Dismiss stage, there is no evidence of a

personality conflict between defendant Bukata and plaintiff.

Plaintiff alleges a claim for race-based hostile environment

because the behavior he was subjected to, as a result of the

individual defendants  conduct, was serious and objectively

offensive.  The instances occurred with frequency, were

humiliating, and were permeated with discriminatory intimidation,

ridicule, and insult.  Defendant Bukata maintained a hostile and

abusive work environment by demeaning plaintiff in front of

fellow supervisors  and his subordinates, for example, by

refusing to address plaintiff  s concerns about the disparate

caseload and clerical support assignments.  Moreover, defendants

refused to address concerns about plaintiff  s performance

informally, but would impose disciplinary action, including written and verbal warnings, and eventually a suspension, thereby denying plaintiff any opportunity to correct any inadequacies until it was too late to avoid an adverse record.  This same technique was used by the Board against Ronald Zappan, who was a White Deputy District Director in the Philadelphia District, until he was constructively discharged in August, 1998, after refusing to impose unwarranted discipline on African American board agents.  Complaint in <u>Zappan v. PA Board of Probation and Parole, et al.</u>, No. 00-CV-1409 (E.D.Pa.).

Contrary to defendants  contentions, therefore, the law sustains plaintiff  s claim for race-based hostile environment. Defendants  actions, as alleged, clearly rise to the level of a racially hostile work environment under <u>Harris</u>.  In the alternative, if there is need for further specificity, plaintiff requests leave to amend the Complaint.

**B.    The Retaliation Claim Is Sufficient: There Is A Causal Connection Between Plaintiff  s Protected Activity and the Adverse Employment Actions.**

Defendants have moved to dismiss plaintiff  s retaliation claims, asserted under Title VII (42 U.S.C. § 2000e-3(a)), asserting that there is no causal connection between plaintiff  s protected activity and the adverse employment action.  (Defs Mem. at 14-16).  They are wrong.

Title VII specifically forbids discrimination against an employee who opposes unlawful conduct.  Section 2000e-3(a) provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In a complaint, plaintiff has only to allege facts which meet his burden of proof.  Retaliation claims under Title VII are governed by the <u>McDonnell-Douglas</u> burden-shifting framework, as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 795, 802 (1973); <u>Ryales v. Phoenixville School District</u>, 177 F.Supp.2d 391, 395 (E.D.Pa. 2001).  To establish his prima facie case of retaliation in violation of Title VII, a plaintiff must demonstrate (and therefore must plead) that: (i) he engaged in protected activity; (ii) the employer took an adverse employment action after or contemporaneous with the employee s protected activity; and (iii) a causal link exists between the employee s protected activity and the employer  s adverse action. <u>Abramson v. William Patterson College</u>, 260 F.3d 265 (3d Cir. 2001); <u>Kachmar v. SunGard Data Systems, Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).  Defendants must prove a  legitimate, non-discriminatory reason for the adverse employment action.  <u>McDonnell Douglas</u>, 411

U.S. at 802-04.

Defendants do not contend that plaintiff does not meet the first and second prongs of the prima facie case, but only contend that he fails to meet the third prong, a causal link between plaintiff s action and the retaliation.  This must be seen in light of the first and second prongs.  Plaintiff engaged in protected activity because he was protesting what he believed to be a discriminatory practice.    Protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct.   Aman v. Cort Furniture Rental Corporation, 85 F.3d 1074, 1085 (3d Cir. 1996).

Similarly, the requirements for the form of the complaint are not rigid.  The case law is clear: the Third Circuit does not require  a  formal letter of complaint to an employer or the EEOC as the only acceptable indicia of protected conduct.   Abramson v. William Patterson College, 260 F.3d 265 (3d Cir. 2001): Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (ADEA case).  Informal protests of discriminatory employment practices, including  making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who filed formal charges  constitutes  protected activity  under Title VII. Barber, 68 F.3d at 702 (citing Sumner

v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990).

As alleged, plaintiff s charges of discriminatory practices clearly reflected a good faith reasonable belief when, over a continual process: (i) he entered into a settlement with defendant Parole Board in 1995 (Complaint ¶8); (ii) he filed a grievance regarding discrimination in December, 2000 (Complaint ¶16); and then later (iii) he expressed concern to his immediate supervisor, defendant Bukata, about the disparate number of cases Bukata assigned to him and his Black colleagues, as compared to his White colleagues (Complaint ¶18); (iv) he made repeated requests to defendants Bukata and Jones for more clerical staff, i.e. to equalize the support staff provided to Black and White supervisors (Complaint ¶¶20,24); and (v) he filed complaints of discrimination with administrative agencies (Complaint ¶¶28,29).

In retaliation for plaintiff s complaints about the discriminatory caseload and clerical staff assignments, defendant Bukata (with the approval of defendant Jones contemporaneously or soon thereafter in 2000 and 2001) took actions adverse to plaintiff, including, but not limited to, hostile assignments and harassment, and terminated him in August, 2001. Id. at ¶56.

The cases cited by defendants are easily distinguishable. In both Jones v. WDAS FM/AM Radio Stations, 74 F.Supp.2d 455

(E.D.Pa. 1999) and <u>Rivadeneira v. City of Philadelphia</u>, 1994 WL
594 122 (E.D.Pa. Oct. 31, 1994), the Court was deciding a summary
judgment motion.  Clearly, different standards are applied at
that stage of the proceedings.  In contrast, this case involves a
complaint.  As stated *supra*, under the federal notice pleading
standard, a complaint must simply "give the defendant fair notice
of what the plaintiff's claim is and the grounds upon which it
rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>See</u> <u>Weston v.
Pennsylvania</u>, 251 F.3d 420, 429 (3d Cir. 2001) (  such simplified
 notice pleading   is made possible by the liberal opportunity for
discovery and the other pretrial procedures established by the
Rules to disclose more precisely the basis of both claim and
defense and to define more narrowly the disputed facts and
issues  ).  Here, plaintiff provided defendants with sufficient
notice as to what his claims are.  Therefore, defendants   motion
to dismiss should be denied.  In the alternative, if there is
need for further specificity, plaintiff requests leave to amend
the Complaint.

### C.   Title VII Allows Defendants Jones and Bukata To Be Held Liable In Their Official Capacities.

Defendants erroneously contend that defendants Jones and
Bukata cannot be held liable under Title VII.  (Defs   Mem. at
16).

Plaintiff concedes that under current case law, individual defendants cannot be held liable, in their **individual capacity**, under Title VII.  See Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc), *cert. denied*, 521 U.S. 1129 (1997).  However, individual defendants may be held liable in their official capacities.  Id.

Therefore, defendants motion to dismiss plaintiff  s Title VII claim against defendants Jones and Bukata in their official capacities should be denied.

## VI.  DEFENDANTS JONES AND BUKATA ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants contend that defendant Jones and Bukata are entitled to qualified immunity as individual employees.  (Defs Mem. at 16-18).  It is not clear on which claims, defendants Jones and Bukata contend they are entitled to qualified immunity. In any case, they are wrong because the claim is inappropriate at this stage.

A public official  s otherwise illegal actions are protected by qualified immunity only if he can show that his offending conduct did not   violate clearly established statutory or constitutional rights which a reasonable person would have known.   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Defendants have the burden to prove that they are protected by

qualified immunity.  <u>Id.</u>  Since it is defendants  burden to show that they are entitled to qualified immunity, the issue should not be decided on a Motion to Dismiss.  <u>Alexander v. Hargrove</u>, 1994 WL 519724 (E.D.Pa. Sep. 22, 1994) (court denied defendants motion to dismiss as premature where Commonwealth defendants assertions of good faith were insufficient, i.e. they did not carry their burden of proving their entitlement to qualified immunity).

Moreover, as discussed *supra*, individual defendants do not have qualified or other immunity in their official capacities under Title VII.  <u>Sheridan</u>, *supra*.  Furthermore, individual defendants do not have qualified immunity under Section 1981  when [they] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.  <u>Cardenas v. Massey</u>, 269 F.3d 251, 268 (3d Cir. 2001) (quoting <u>Al-Kharzraji v. Saint Francis Coll</u>, 784 F.2d 505, 518 (3d Cir. 1986); <u>Phillips v. Massey</u>, 197 F.Supp.2d 207, 224 (E.D.Pa. 2002).  If the individual defendants were  personally involved  in the alleged discrimination  , and if they  intentionally caused  the infringement of plaintiff  s Section 1981 rights, or if  they authorized, directed, or participated in the discriminatory conduct, they may be held personally liable under Section 1981.  <u>Al-Kharzraji</u>, 784 F.2d at 518.

Here, defendant Bukata was  personally involved  in the
discrimination, as he was plaintiff  s supervisor, and was in
charge of assigning the disparate caseload to plaintiff.
Furthermore, he was  personally involved  in the decision to deny
plaintiff clerical support, despite the fact that White
supervisors were provided with such support.  These are just a
few examples of defendant Bukata  s personal involvement in the
discrimination against plaintiff.  Moreover, not only was
defendant Jones  personally involved  in the discrimination, but
he also  directed  and  authorized  the discriminatory conduct.
After being made aware of the problems, via plaintiff  s written
and verbal complaints made directly to Jones, he refused to take
action to ameliorate the situation, despite the fact that he was
and is the District Director, and clearly had the authority to do
so.  Plaintiff alleges that Jones directed Bukata to engage in
the discriminatory conduct and perpetuate the discriminatory,
hostile environment at the Parole Board.  Moreover, Jones
refusal to take action to correct the continuous pattern and
practice of harassment and retaliation against African American
employees amounts to a tacit approval of the conduct.

While qualified immunity is available on appropriate proofs,
to Jones and Bukata, they have not met their burden to show that
they are entitled to such immunity.  The Third Circuit has

enunciated a three part test to determine whether defendants are entitled to qualified immunity:

(1)   whether the plaintiff alleged a violation of his constitutional rights;

(2)   whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and

(3)   whether a reasonable official knew or should have known that the alleged action violated the plaintiff s rights. <u>Rouse v. Plantier</u>, 182 F.3d 192, 196-97 (3d Cir. 1999).

Defendants contend that it is not clear that their conduct violated plaintiff s constitutional or statutory rights.  (Defs Mem. at 17).  Defendants cannot show that if all the facts alleged in the Complaint were true, including all inferences, their violation was not clear.  The right to be free from discrimination and retaliation based upon race in the workplace, is well grounded in the law and widely known to the public for many years now.  Defendant Bukata treated plaintiff differently than his White peers when he assigned a disproportionate caseload and refused to adequately supply his unit with support staff, to list but a few of the examples.  Defendant Jones was made aware of Bukata s actions, and condoned the actions.

A reasonable official would have or should have known that he was violating plaintiff s rights by treating plaintiff differently because of his race.  Therefore, defendants  claim of qualified immunity should be denied, and should be particularly

denied at this stage because defendants have the burden to prove immunity, and may not do so at this stage of the litigation.

<u>CONCLUSION</u>

For the foregoing reasons, defendants   Motion to Dismiss should be denied.  In the alternative, plaintiff requests leave to amend to further specify facts in any area deemed inadequately pled.

Respectfully submitted,

_____

ROBERT J. SUGARMAN
DEBBIE L. GOLDBERG
Counsel for Plaintiff

OF COUNSEL:
SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA  19103
215-864-2500

Dated: August 26, 2002