IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
HENRY WATKINS                       :
7027 Lincoln Drive                  :
Philadelphia, PA 19119              :
                                    :
            Plaintiff,              :
                                    :
       v.                           :    NO. 02-CV-2881
                                    :
PENNSYLVANIA BOARD OF               :
PROBATION & PAROLE                  :
1400 Spring Garden Street           :
14th Floor                          :
Philadelphia, PA 19130              :
                                    :
And                                 :
                                    :
Edward Jones                        :
PROBATION & PAROLE                  :
1400 Spring Garden Street           :
14th Floor                          :
Philadelphia, PA 19130              :
                                    :
And                                 :
                                    :
Michael Bukata                      :
PROBATION & PAROLE                  :
1400 Spring Garden Street           :
14th Floor                          :
Philadelphia, PA 19130              :
                                    :
            Defendants.             :
```

### SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a), plaintiff hereby files a Second Amended Complaint to add a reference to Section 1983 in Count I and avers as follows:

Plaintiff brings this suit upon a cause of action of which

F:\Watkins\Pleadings\Second Amended Complaint 03-31-06.wpd



the following is a statement:

## PARTIES

1. Plaintiff Henry Watkins, a Pennsylvania resident, resides at 7027 Lincoln Drive Philadelphia, PA 19119.

2. Pennsylvania Board of Probation and Parole is a Pennsylvania agency having a principal place of business at the State Office Building, Broad and Spring Garden Streets, Philadelphia, Pennsylvania.

3. Edward Jones is a District Director at the Pennsylvania Board of Probation and Parole and took actions against plaintiff which are the subject of this litigation. Defendant Jones is, upon information and belief, a resident of the Commonwealth of Pennsylvania, with his principal place of business at the State Office Building, Broad and Spring Garden Streets, Philadelphia, Pennsylvania. He is sued in his individual and official capacities.

4. Michael Bukata is a Deputy Director at the Pennsylvania Board of Probation and Parole and took actions against plaintiff which are the subject of this litigation. Defendant Bukata is, upon information and belief, a resident of the Commonwealth of Pennsylvania, with his principal place of business at the State Office Building, Broad and Spring Garden Streets, Philadelphia, Pennsylvania. He is sued in his individual and official capacities.

**FACTUAL ALLEGATIONS**

5.  Plaintiff, who is a Black male, was hired as a Parole Board Agent on or about October 13, 1973, and was promoted to supervisor in 1998 after a settlement of a previous discrimination case. He was fired on August 5, 2001.

6.  As a Parole Agent, plaintiff received "satisfactory", if not better, evaluations from his immediate supervisor Daniel Solla, until he and other Black employees settled the suit on or about May 10, 1995.

7.  As part of the settlement, the parties were required to pursue an alternative dispute resolution in response to complaints of discrimination and retaliation and promote plaintiff to supervisor. Defendants suborned this provision by refusing to implement it.

8.  Defendant Bukata was plaintiff's immediate supervisor in the years 1999 through 2001. He repeatedly and continually discriminated against plaintiff because of his race, as more fully set forth hereinafter, as part of a continuing pattern and practice of discrimination and retaliation, inter alia to block promotion of Black employees, such as plaintiff, beyond supervisor and in retaliation for the settlement plaintiff reached with defendant Parole Board in 1995.

9.  Defendant Bukata wrote unfair, negative performance evaluations regarding plaintiff in 2000 and 2001.

10. As discrimination and retaliation, defendant Bukata denied plaintiff the opportunity to correct any alleged job deficiencies, as plaintiff only first learned of any alleged deficiencies when he received his annual performance evaluations, contrary to Board policy.

11. Defendant discriminatorily only included alleged negative aspects of plaintiff's job performance in his job evaluations, although he was required to include all negative and positive aspects. Also, he discriminatorily excluded reference to and credit for plaintiff's activities in the community, contrary to Board policy. Plaintiff received a distinguished service award for working on the Fatherhood Committee in 1999. This award was not mentioned in plaintiff's job performance evaluation. On his own time, at least once per month, plaintiff also gave lectures regarding probation and parole issues as part of the Dowp Program (Drug Offender Work Program). As a Dowp supervisor, plaintiff worked with young offenders to encourage continuing education and to assist them in finding employment. Defendant Bukata was aware of plaintiff's community activism. The Board required plaintiff to submit forms regarding his community service activities and he did so. Plaintiff's community activism should have been reflected in his performance evaluation.

12. The adverse report(s) by defendant Bukata was part of, and was used to further, a conspiracy to establish an unfair

discriminatory record to fire plaintiff.

13. Despite Board policy requiring defendant Bukata to meet with plaintiff to review his performance evaluation and other performance issues, Bukata never did so. Bukata merely handed his evaluation to plaintiff or left a copy for him to sign in his mailbox.

14. Plaintiff requested meetings with defendant Jones to discuss his performance evaluations. These requests were made directly to defendant Jones in writing and via e-mail. Contrary to the treatment given to White persons, and as part of the racial discrimination and retaliation against plaintiff, defendant Jones refused to discuss the matter and merely directed plaintiff to discuss any concerns with his immediate supervisor, defendant Bukata.

15. In November, 2000, plaintiff finally met with Jones and Bukata regarding his performance evaluation, but plaintiff was not given an opportunity to express his concerns. Jones merely concurred with Bukata's assessment.

16. Accordingly, plaintiff filed a grievance regarding the foregoing discrimination. In December, 2000, at the grievance hearing thereon, plaintiff met with Thomas Marshall, the Board's Labor Relations Specialist, and sought to discuss his performance evaluation and other performance issues. Once again, however, plaintiff was merely directed to Bukata.

17. In further retaliation for the prior complaints

and settlement, defendants assigned more cases to plaintiff's Unit than White supervisors. James Burton, another Black supervisor, was also assigned more cases than the White supervisors.

18. Plaintiff expressed a complaint to defendant Bukata about the disparate number of cases Bukata assigned to him and his Black colleagues, as compared to his White colleagues. In retaliation, Bukata refused to assign a secretary to plaintiff for approximately one year.

19. For approximately one year, plaintiff was denied clerical support staff and was forced to perform clerical duties, as well as his own duties.

20. Plaintiff made repeated requests to Bukata and Jones for more clerical staff. In further retaliation, these requests were ignored.

21. Donna Henry and Stuart Greenberg, White supervisors in plaintiff's unit, were discriminatorily assigned the assistance of secretaries.

22. In January, 2001, Bukata made a sham offer to plaintiff of secretarial assistance of his secretary, but the secretary was located too far away to provide assistance to plaintiff. Further, she was already busy with Bukata's assignments, and expressed reluctance to assist plaintiff, as he was not her supervisor. As a result, her services to plaintiff were not meaningful, as intended by Jones and Bukata.

23. The discriminatory environment maintained and promoted at the Parole Board and the discriminatory actions taken by the individual defendants thereby, continued and the increasing level of discriminatory discipline was ultimately escalated by defendants, so as to fire plaintiff from his job on August 5, 2001, as intended.

24. Defendants' discriminatory actions were part of a continuing pattern and practice of discrimination and retaliation, including, but not limited to, the following examples:

    (a) Defendant Bukata never addressed concerns about plaintiff's performance informally, but he would impose disciplinary action, including written and verbal warnings, and eventually a suspension, thereby denying plaintiff any opportunity to correct any inadequacies until it was too late to avoid an adverse record.

    (b) Defendant Bukata did not provide plaintiff with the same one-on-one supervision White supervisors benefitted from. Defendant Bukata would frequently meet with Donna Henry and Stuart Greenberg, but would not meet with plaintiff. In fact, on a weekly basis, defendant Bukata would travel at least ten (10) miles to meet Donna Henry, who worked in the Tioga office, but he refused to meet with plaintiff who worked in the same building.

    (c) Defendant Bukata ignored plaintiff's repeated

requests for clerical staff, despite the fact that White supervisors were provided with secretarial assistance.

    (d) Defendant Bukata assigned more cases to Black supervisors than White supervisors.

25. Defendants have practiced a continuing pattern and practice of harassing Black employees and Whites they believe are sympathetic to Black employees, and defendants harassed plaintiff according to this pattern and practice. The pattern and practice has led to numerous settlements of suits against the Board, including those of Henry Williams, James Burton, Calvin Ogletree, and Joseph Scott.

26. Defendants' harassment, race discrimination, and retaliation, which violates the rights guaranteed under Title VII of the Civil Rights Act of 1964, was conducted with malice and reckless disregard for plaintiff's protected rights.

27. Plaintiff did not pursue the ADR option specified in the Settlement as it would have been futile, as demonstrated by defendants' repeated refusals to pursue it in the past on complaints by other former plaintiffs.

28. Plaintiff filed a timely complaint with the EEOC.

29. Plaintiff's EEOC charge of discrimination was forwarded to the PHRC for dual-filing. Plaintiff was notified by the EEOC of the dual filing on January 10, 2002. The case is still pending.

## COUNT I:   42 U.S.C. § 1981 AND § 1983

30.  Plaintiff hereby incorporates by reference the allegations of this Complaint as though each was fully set forth at length herein.

31.  The Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, prohibits discrimination against any person on the basis of race in the making, performance, modification and termination of contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.  Section 1983 prohibits disparate treatment and/or retaliation based on race under color of law.

32.  Section 1983 prohibits state actors from denying equal civil rights and creates a cause of action for such denials against state actors.

33.  Defendants, state actors on the basis of race, discriminated against plaintiff, in the performance, modification and termination of the employment contract, including the enjoyment of all benefits, privileges, terms and conditions of this contractual relationship.

34.  Defendants intentionally discriminated, retaliated against and terminated plaintiff, because of his race, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, which prohibits discrimination in the making and enforcement of employment contracts based on race, and Section

1983.

## COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DELETED PER COURT ORDER)

35. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 34 as though each was fully set forth at length herein.

36. The racial discrimination, retaliation and work-related harassment caused the plaintiff extreme emotional distress, and although defendants were aware of the distress and his susceptibility to it, they not only failed to stop the harassment, but were in large measure responsible for it.

37. The foregoing harassment conducted caused plaintiff to suffer extreme emotional distress.

38. Defendants' actions were an intentional infliction of emotional distress, giving rise to a claim under the tort law of Pennsylvania.

## COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (DELETED PER COURT ORDER)

39. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 38 as though each was fully set forth at length herein.

40. Defendants' negligent racial discrimination, retaliation and work-related harassment caused plaintiff extreme emotional distress, and although defendants were aware of the

distress and his susceptibility to it, they not only failed to stop the harassment but were in large measure responsible for it.

41. Negligent infliction of emotional distress is alleged as an alternate theory of recovery for this discrimination, retaliation and work-related harassment.

42. This cause of action is actionable as a negligent infliction of emotional distress claim under the tort law of Pennsylvania.

## COUNT IV: CONSPIRACY

43. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 as though each was fully set forth at length herein.

44. The defendants conspired to on their personal, as well as in their official capacities, to discriminate against plaintiff by treating Black employees differently based on their race, and taking action against plaintiff, other Black employees, and White employees who were sympathetic.

45. In furtherance of their plans to discriminate against plaintiff, defendants acted in concert with each other by discussing and agreeing to the actions that would be undertaken to discriminate against plaintiff and to terminate him.

## COUNT V: TITLE VII

46. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 45 as though each

was fully set forth at length herein.

47. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1991, prohibit discrimination in employment conditions or other incidents of employment, and prohibits an employer from conducting unlawful retaliatory actions against an employee.

48. At all times relevant to this action, the defendants had actual and constructive knowledge of discrimination against plaintiff. At all times relevant to this action, the defendants actively participated in the discriminatory practices perpetrated upon plaintiff.

49. At all times relevant to this action, the defendants failed and refused to address the discriminatory practices in an effective manner and ameliorate the discriminatory practices perpetrated upon plaintiff by others.

50. The discriminatory practices and harassment perpetrated upon plaintiff substantially altered the conditions of his employment and created an abusive and hostile work environment.

51. By creating, condoning and perpetuating discrimination in the workplace, the defendants, jointly and individually, violated Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

52. Any proffered non-discriminatory reasons for defendants' actions are illegitimate and pretextual.

53. These discriminatory practices humiliated plaintiff and unreasonably interfered with his work performance, thus making his life intolerable and inhibiting any opportunity he had for promotion.

54. As a result of defendants' conduct, plaintiff has suffered severe physical, psychological and emotional distress; financial loss; public humiliation; shame and embarrassment; and loss of his job and all benefits associated therewith.

55. Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission. Plaintiff's PHRC charge was dually filed with the EEOC. Plaintiff received a right to sue letter after April 30, 2002. (Letter attached hereto as Exhibit "A").

## COUNT VI: TITLE VII (RETALIATION)

56. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55 as though each was fully set forth at length herein.

57. Plaintiff's complaints of discriminatory practices by the defendants were activities protected by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

58. As a result of plaintiff's protected opposition to defendants' discriminatory practices, the defendants made employment decisions adverse to the plaintiff, including, but not limited to, assignments and harassment, as set forth in more

detail above.

59. These adverse employment decisions constituted unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

### REQUESTED RELIEF

WHEREFORE, on all Counts, plaintiff requests that the Court find and determine, after trial by jury as appropriate, that plaintiff has suffered substantial and continuing injury as a result of, *inter alia*, deprivation of his civil and Constitutional rights, racial discrimination and harassment, and retaliation, and award the following relief, as appropriate, against all of the defendants, jointly and severally:

(a) Loss of income, plus interest, including loss of fringe benefits, health insurance, retirement contributions, and lost seniority rights;

(b) Compensatory damages;

(c) Prejudgment interest, attorneys' fees and costs;

(d) Punitive damages; and

(e) Such other legal and equitable relief as is just and proper.

**JURY TRIAL DEMANDED**

_____
ROBERT J. SUGARMAN
Attorney I.D. # 03332
Counsel for Plaintiff

F:\Watkins\Pleadings\Second Amended Complaint 03-31-06.wpd

OF COUNSEL:

SUGARMAN & ASSOCIATES, PC
11th Floor, Robert Morris Bldg.
100 North 17th Street
Philadelphia, PA 19103
215-864-2500

Date: April 14, 2006