IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY WATKINS, : | |
| : | NO. 02-CV-2881 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| PENNSYLVANIA BOARD OF : | |
| PROBATION & PAROLE, : | |
| EDWARD JONES, and MICHAEL BUKATA : | |
| : | |
| Defendants. : | |
| : | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Defendants, Pennsylvania Board of Probation and Parole ("the Board"), Willie E. Jones ("Mr. Jones") (improperly pled as Edward Jones), and Michael Bukata ("Mr. Bukata"), by their attorneys, Miller, Alfano & Raspanti, P.C., respectfully submit these proposed jury instructions.

## INTRODUCTORY CHARGE

In this case, Mr. Watkins alleges that he was discriminated against because of his race and was retaliated against as a result of engaging in protected activity - namely filing a race discrimination complaint. Mr. Watkins also alleges that Mr. Jones and Mr. Bukata engaged in a conspiracy to discriminate and retaliate against him for an unlawful purpose. The defendants assert that Mr. Watkins was not discriminated, or retaliated against. The defendants assert that despite the defendants' efforts to train and counsel Mr. Watkins, he continued to display

poor performance in executing his job duties resulting in discipline.

**TABLE OF CONTENTS**

| Charge | Model | Page |
|---|---|---|
| Introductory | | 1 |
| 1.0 Title VII - Individual v. Official Capacity Liability | | 5 |
| 1.1 Elements of a Title VII Claim - Disparate Treatment - Mixed Motive | 5.1.1 | 6 |
| 1.2 Elements of a Title VII Claim - Disparate Treatment - Pretext | 5.1.2 | 9 |
| 1.3 Elements of a Title VII Action - Harassment (Discrimination or Retaliation) - Hostile Work Environment - Tangible Employer Action | 5.1.4 and 5.2.1 | 12 |
| 1.4 Title VII Damages - Compensatory Damages - General Instruction | 5.4.1 | 17 |
| 1.5 Title VII Damages - Back Pay - For Advisory or Stipulated Jury | 5.4.3 | 23 |
| 1.6 Title VII Damages - Front Pay - For Advisory or Stipulated Jury | 5.4.4 | 25 |
| 1.7 Title VII Damages - Nominal Damages | 5.4.5 | 27 |
| 2.0 42 U.S.C. § 1981 Introductory Charge | | 28 |
| 2.1 Section 1981 provides as Follows:<br><br>(a) Statement of equal rights<br>(b) Definition<br>(c) Protection against impairment | | 29 |
| 2.2 Elements of a Section 1981 Claim - Retaliation | 6.1.6 | 33 |
| 2.3 Section 1981 Damages - Punitive Damages | 6.4.2 | 35 |
| 2.4 Section 1981 Definitions - Hostile or Abusive Work Environment | 6.2.2 | 38 |
| 2.5 Section 1981 Damages - Compensatory Damages - General Instruction | 6.4.1 | 39 |

| Charge | Model | Page |
|--------|-------|------|
| 2.6    Section 1981 Damages - Back Pay - For Advisory or Stipulated Jury | 6.4.3 | 40 |
| 2.7    Section 1981 Damages - Front Pay - For Advisory or Stipulated Jury | 6.4.4 | 41 |
| 2.8    Section 1981 Damages - Nominal Damages | 6.4.5 | 42 |
| 3.1    Section 1983 Introductory Instruction | 4.1 | 43 |
| 3.2    Section 1983 - Elements of Claim | 4.3 | 44 |
| 3.3    Section 1983 - Action under Color of State Law - Action under Color of State Law Is Not in Dispute | 4.4.1 | 45 |
| 3.4    Section 1983 - Damages - Compensatory Damages | 4.8.1 | 46 |
| 3.5    Section 1983 - Damages - Nominal Damages | 4.8.2 | 49 |
| 3.6    Section 1983 - Damages - Punitive Damages | 4.8.3 | 50 |
| 4.1    Civil Conspiracy | | 54 |

**Additions to Model Jury Charges are indicated in bold type.**

# 42 U.S.C. § 2000e
# TITLE VII CLAIMS

**1.0        Title VII - Individual v. Official Capacity Liability**

There is no individual liability under Title VII, but an employee may be sued in his "official capacity". <u>See</u> <u>In Re Montgomery</u>, 215 F.3d 367, 373 (3d Cir. 2000). Therefore, you may only consider claims under Title VII against Mr. Jones and Mr. Bukata in their official capacities. <u>See</u> <u>Watkins v. Pa. Bd. of Prob. and Parole</u>, 2002 WL 32182088, at *10 (E.D.Pa. Nov. 25, 2002). An official capacity lawsuit is no different than a lawsuit against the state itself, as it is not a claim against the individual, but against the individual's office. <u>See</u> <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989). Therefore, when considering whether Mr. Watkins has proven his claims under Title VII, you will only consider his claims against the state agency and the offices held by Mr. Jones and Mr. Bukata.

**1.1.      Elements of a Title VII Claim— Disparate Treatment — Mixed-Motive[1]**

In this case Henry Watkins is alleging that defendants, the Pennsylvania Board of Probation and Parole and/or Willie E. Jones, in his official capacity, and/or Michael Bukata, in his official capacity, ("defendants") discriminated against him based on his race, African American.  In order for Henry Watkins to recover on this discrimination claim against defendants, Mr. Watkins must prove that the defendants intentionally discriminated against him. This means that Mr. Watkins must prove that his race was a motivating factor in defendants' decision not to promote and/or to terminate Mr. Watkins.  See E.E.O.C. v. Metal Service Co., 892 F.2d 341, 347-348 (3d Cir. 1990) (citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988)); Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 670 (1989).

---

[1]      The distinction between "mixed-motive" cases and "pretext" cases is generally determined by whether the plaintiff produces direct rather than circumstantial evidence of discrimination.  If the plaintiff produces direct evidence of discrimination, this is sufficient to show that the defendant's activity was motivated at least in part by animus toward a protected class, and therefore a "mixed-motive" instruction is given.  If the evidence of discrimination is only circumstantial, then defendant can argue that there was no animus at all, and that its employment decision can be explained completely by a non-discriminatory motive; it is then for the plaintiff to show that the alleged non-discriminatory motive is a pretext, and accordingly this Instruction should not be given.  See generally Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002) (using "direct evidence" to describe "mixed-motive" cases and noting that pretext cases arise when the plaintiff presents only indirect or circumstantial evidence of discrimination).

To prevail on this claim, Mr. Watkins must prove both of the following by a preponderance of the evidence:

First: Defendants suspended and/or terminated Mr. Watkins; and

Second: Mr. Watkins' race was a motivating factor in the defendants' decision.

Although Mr. Watkins must prove that the defendants acted with the intent to discriminate, Mr. Watkins is not required to prove that the defendants acted with the particular intent to violate his federal civil rights.

In showing that his race was a motivating factor for the defendants' action, Mr. Watkins is not required to prove that his race was the sole motivation or even the primary motivation for the defendants' decision. Mr. Watkins need only prove that his race played a motivating part in the defendants' decision even though other factors may also have motivated the defendants.

As used in this instruction, Mr. Watkins' race was a "motivating factor" if his race played a part or played a role in the defendants' decision to suspend and/or terminate Mr. Watkins.

**For use where defendant sets forth a "same decision" affirmative defense:**

If you find that the defendants' treatment of Henry Watkins was motivated by both discriminatory and lawful reasons, you must decide whether Mr. Watkins is entitled to damages. Mr. Watkins is not entitled to damages if the defendants prove by a preponderance of the evidence that they would have treated Henry Watkins the same

even if Mr. Watkins' race had played no role in the employment decision.

**See** **Model Jury Charge 5.1.1.**

**1.2.    Elements of a Title VII Claim – Disparate Treatment — Pretext[1]**

In this case Henry Watkins is alleging that he was treated differently from white employees in the same position as him, Parole Agent Supervisor, based on his race, African American. **The defendants contend that their actions were legitimate and justified and not based on race.**

In order for Mr. Watkins to recover on this discrimination claim against the defendants, Mr. Watkins must prove that the Board and/or Mr. Jones, in his official capacity, and/or Mr. Bukata, in his official capacity, (the "Defendants") intentionally discriminated against him. This means that Mr. Watkins must prove that his race was a determinative factor in the defendants' decision to treat white employee(s) disparately from Mr. Watkins.

To prevail on this claim, Mr. Watkins must prove both of the following by a preponderance of the evidence:

First: Defendants suspended and/or terminated plaintiff; and

Second: Mr. Watkins' protected status was a determinative factor in the defendants' decision.

Although Mr. Watkins must prove that the defendants acted with the intent to discriminate, Mr. Watkins is not required to prove that the defendants acted with the particular intent to

_____

[1]    This instruction is to be used when the plaintiff's proof of discrimination is circumstantial rather than direct. <u>See</u> Comment to Instruction 5.1.1.

violate his federal civil rights.  Moreover, Mr. Watkins is not required to produce direct evidence of intent, such as statements admitting discrimination.  Intentional discrimination may be inferred from the existence of other facts.

Defendants have given a nondiscriminatory reason for their decision to suspend, and, ultimately, to terminate Mr. Watkins.  If you disbelieve the defendants' explanations for their conduct, then you may, but need not, find that Mr. Watkins has proved intentional discrimination.  In determining whether the defendants' stated reason for their actions was a pretext, or excuse, for discrimination, you may not question the defendants' business judgment.  You cannot find intentional discrimination simply because you disagree with the business judgment of the defendants or believe it is harsh or unreasonable.[2]  You are not to consider the defendants' wisdom.  However, you may consider whether the defendants' reason is merely a cover-up for discrimination.

---

[2]     See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991).

Ultimately, you must decide whether Mr. Watkins has proven[3] that his race was a determinative factor[4] in the defendants' decision to suspend, and, ultimately, to terminate Mr. Watkins. "Determinative factor" means that if not for Mr. Watkins' race, he would have been promoted and/or would not have been terminated.

**See** **Model Jury Charge 5.1.2**

---

[3]    A plaintiff in a Title VII case always bears the burden of proving whether the defendant intentionally discriminated against the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993). See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 347 n.1 (3d Cir. 1999).

[4]    See Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000).

**1.3.    Elements    of    a    Title    VII    Action    —
Harassment(Discrimination or Retaliation) — Hostile Work
Environment — Tangible Employment  Action**

Henry Watkins claims that he was subjected to harassment by
the Pennsylvania Board of Probation and Parole ("the Board"),
Mr. Jones, in his official capacity, and Mr. Bukata, in his
official capacity, and that this harassment was motivated by
Mr. Watkins' race and was in retaliation for a prior claim made by
Mr. Watkins for race discrimination. **The defendants contend that
their actions were legitimate and justified and not based on race.**

The defendants are liable for the actions of Mr. Jones and
Mr. Bukata in Mr. Watkins' claim of  harassment if Mr. Watkins
proves all of the following elements by a preponderance of the
evidence:

First: Mr. Watkins was subjected to discrimination by the
Board and/or Mr. Jones and/or Mr. Bukata.

Second: The Board's and/or Mr. Jones' and/or Mr. Bukata's
conduct was not welcomed by Mr. Watkins.

Third: Mr. Jones and Mr. Bukata's conduct was motivated by the
fact that Mr. Watkins is an African American, and/or because
of his prior claim against the Board for race discrimination.[1]

Fourth: The conduct was so  severe or pervasive that a
reasonable person in Mr. Watkins' position would find
Mr. Watkins' work environment to be hostile or abusive.  This
element requires you to look at the evidence from the point of
view of a reasonable African American's reaction to

---

[1]    See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S.
75, 80-81 (1998); Jensen v. Potter, 435 F. 3d 444, 447 (3d Cir.
2006).

Mr. Watkins' work environment.[2]

Fifth: Mr. Watkins' believed his work environment to be hostile or abusive as a result of Mr. Jones' and/or Mr. Bukata's conduct.[3]

Sixth: Mr. Watkins suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.[4]

An adverse employment action "is one which is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"[5] A significant change in employment status is a "hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits."[6] A written reprimand is not adverse employment actions when it does not change or alter a condition of employment.[7]

---

[2]    See Harris v. Forklift Sys., 510 U.S. 17, 22 (1993); see Jensen, 435 F.3d 444 at n. 3.

[3]    See Harris, 510 U.S. at 21.

[4]    See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

[5]    See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)(quoting Robinson v. City of Pittsburgh, 120 F.2d 1286, 1300 (3d Cir. 1997)).

[6]    Weston v. Pa., 251 F.3d 420,431(3d Cir. 2001)(quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998)).

[7]    See Weston, 251 F.3d at 431.

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

• The total physical environment of Mr. Watkins' work area.

• The degree and type of language and insult that filled the environment before and after Mr. Watkins' arrived.

• The reasonable expectations of Mr. Watkins upon entering the environment.

• The frequency of the offensive conduct.[8]

• The severity of the conduct.

• The effect of the working environment on Mr. Watkins' mental and emotional well-being.

• Whether the conduct was unwelcome, that is, conduct Mr. Watkins regarded as unwanted or unpleasant.

• Whether the conduct was pervasive.

• Whether the conduct was directed towards Mr. Watkins.

• Whether the conduct was physically threatening or humiliating.

• Whether the conduct was merely a tasteless remark.

• Whether the conduct unreasonably interfered with Mr. Watkins' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work

---

[8]    See Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998).

environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Watkins was harassed because of his race, African American. The harassing conduct may, but need not be racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race. The key question is whether Mr. Watkins, as an African American, was subjected to harsh employment conditions to which non-African American employees were not.

It is important to understand that, in determining whether a hostile work environment existed at the Board you must consider the evidence from the perspective of a reasonable African American in the same position.[9]  That is, you must determine whether a reasonable African American would have been offended or harmed by the conduct in question.  You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously

---

[9]    Hurley v. A.C.P.D., 174 F.3d 95, 115-17 (3d Cir. 1999).

affect the psychological or emotional well-being of a reasonable African American.  The reasonable African American is simply one of normal sensitivity and emotional make-up.  See e.g., Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).


**See Model Jury Charge 5.1.4 and 5.2.1**

**1.4   Title VII Damages — Compensatory Damages — General Instruction**

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the defendants should be held liable.

If you find by a preponderance of the evidence that one, some or all of the defendants intentionally discriminated against Henry Watkins by suspending and/or terminating Mr. Watkins, then you must consider the issue of compensatory damages.  You must award Mr. Watkins an amount that will fairly compensate him for any injury he actually sustained as a result of the defendants' conduct.  The damages that you award must be fair compensation, no more and no less.  The award of compensatory damages is meant to put Mr. Watkins in the position he would have occupied if the discrimination had not occurred.  Mr. Watkins has the burden of proving damages by a preponderance of the evidence.

Mr. Watkins must show that the injury would not have occurred without the defendants' act or omission.  Mr. Watkins must also show that the defendants' act or omission played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the defendants' act or omission.  This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether the defendants' actions or omissions were motivated by discrimination.  In other words, even

assuming that the defendants' actions or omissions were motivated by discrimination, Mr. Watkins is not entitled to damages for an injury unless the defendants' discriminatory actions or omissions actually played a substantial part in bringing about that injury.

There can be more than one cause of an injury. To find that the defendants' act or omission caused Mr. Watkins' injury, you need not find that the defendants' act or omission was the nearest cause, either in time or space. However, if Mr. Watkins' injury was caused by a later, independent event that intervened between the defendants' act or omission and Mr. Watkins' injury, the defendants are not liable unless the injury was reasonably foreseeable by the defendants.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Watkins experienced as a consequence of the defendants' allegedly unlawful act or omission. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any

award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Watkins would have earned, either in the past or in the future, if he had continued in employment with the Board. These elements of recovery of wages that Mr. Watkins would have received from the Board are called "back pay" and "front pay". [Under the applicable law, the determination of "back pay" and "front pay" is for the court.] ["Back pay" and "front pay" are to be awarded separately under instructions that I will soon give you, and any amounts for "back pay"and "front pay" are to be entered separately on the verdict form.]

You may award damages for monetary losses that Mr. Watkins may suffer in the future as a result of the defendants' allegedly unlawful act or omission. [For example, you may award damages for loss of earnings resulting from any harm to Mr. Watkins' reputation that was suffered as a result of the defendants' allegedly unlawful act or omission. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Mr. Watkins would have earned in

the future from the Board if he had retained the job.

As I instructed you previously, Mr. Watkins has the burden of proving damages by a preponderance of the evidence.  But the law does not require that Mr. Watkins prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

You are instructed that Mr. Watkins has a duty under the law to "mitigate" his damages--that means that Mr. Watkins must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendants.  It is the defendants' burden to prove that Mr. Watkins has failed to mitigate.  So if the defendants persuade you by a preponderance of the evidence that Mr. Watkins failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Watkins' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In assessing damages, you must not consider attorney fees or the costs of litigating this case.  Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.


<u>See</u> **Model Jury Charge 5.4.1**

**Comment**

Title VII distinguishes between disparate treatment and disparate impact discrimination and only allows recovery of compensatory damages to those who suffered intentional discrimination. 42 U.S.C.A. § 1981a(a)(1).

*Cap on Damages*

The Civil Rights Act of 1991 (42 U.S.C. §1981a) provides for compensatory damages and a right to jury for disparate treatment violations. But it also imposes a statutory limit on the amount of compensatory damages that can be awarded. See 42 U.S.C. §1981a(b)(3):

> **Limitations.** The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party–
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 300,000.

42 U.S.C. §1981a (c)(2) provides that the court shall not inform the jury of the statutory limitations on recovery of compensatory damages.

*No Right to Jury Trial for Back Pay and Front Pay*

Back pay and front pay are equitable remedies that are to be distinguished from the compensatory damages to be determined by the jury under Title VII. See the Comments to Instructions 5.4.3 -4. Compensatory damages may include lost future earnings over and

above the front pay award.

The pattern instruction contains bracketed material that would instruct the jury not to award back pay or front pay. The jury may, however, enter an award of back pay and front pay as advisory, or by consent of the parties. In those circumstances, the court should refer to instructions 5.4.3 for back pay and 5.4.4 for front pay. In many cases it is commonplace for back pay issues to be submitted to the jury. The court may think it prudent to consult with counsel on whether the issues of back pay or front pay should be submitted to the jury (on either an advisory or stipulated basis) or is to be left to the court's determination without reference to the jury.

*Damages for Pain and Suffering*

In Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1121-22 (3d Cir.1988), the Court held that under 42 U.S.C. § 1981 and Title VII, a plaintiff cannot recover pain and suffering damages without first presenting evidence of actual injury. The court stated that "[t]he justifications that support presumed damages in defamation cases do not apply in § 1981 and Title VII cases. Damages do not follow of course in § 1981 and Title VII cases and are easier to prove when they do."

*Attorney Fees and Costs*

There appears to be no uniform practice regarding the use of an instruction that warns the jury against speculation on attorney fees and costs. The Third Circuit has not spoken on the propriety or necessity of such an instruction. Bracketed material is included for a court to use if it is concerned about jury speculation on attorney fees and costs. See Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000), and Brooks v. Cook, 938 F.2d 1048, 1051 (9th Cir. 1991), for concerns expressed about instructions involving attorney fees.

**1.5  Title VII Damages – Back Pay— For Advisory or Stipulated Jury**

If you find that one, some, or all of the defendants intentionally discriminated against Henry Watkins by failing to promote and/or terminating him, then you must determine the amount of damages that the defendants' actions have caused Mr. Watkins. Mr. Watkins has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Watkins for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Watkins would have received from the Board had Mr. Watkins not been the subject of the defendants' intentional discrimination.

Back pay damages, if any, apply from the date of **Mr. Watkins'** termination until the date of your verdict.  [However, federal law limits a plaintiff's recovery for back pay to a maximum of a two year period before the plaintiff filed his discrimination charge with the Equal Opportunity Employment Commission.  Therefore the back pay award in this case must be determined only for the period between **August 3, 2001** the present].

You must reduce any award by the amount of the expenses that Mr. Watkins would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mr. Watkins has obtained from other

employment during this period.  However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

You are further instructed that Mr. Watkins has a duty to mitigate his damages--that is Mr. Watkins is required to make reasonable efforts under the circumstances to reduce his damages. It is the defendants' burden to prove that Mr. Watkins has failed to mitigate.  So if the defendants persuade you, by a preponderance of the evidence, that Mr. Watkins failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Watkins reasonably would have earned if he had obtained those opportunities.

See 42 U.S.C. § 1981(b)(2); Fed.R.Civ.P. 39(c); Gunby, 840 F.2d at 1119-20; 42 U.S.C. § 2000e-5(g); See Albemarle Paper v. Moody, 422 U.S. 405, 410 n.3. (1975) Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 54 (3d Cir. 1989); Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995); Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 29 (3d Cir. 1987); Anastasio v. Schering Corp., 838 F.2d 701, 707-08 (3d Cir. 1988); Tubari Ltd., Inc. V. NLRB, 959 F.2d 451, 454 (3d Cir. 1992); Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982).

**See Model Jury Charge 5.4.3**

## 1.6  Title VII Damages — Front Pay — For Advisory or Stipulated Jury

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Watkins would reasonably have earned from the Board had Mr. Watkins not been terminated for the period from the date of your verdict through a reasonable period of time in the future.  From this figure you must subtract the amount of earnings and benefits Mr. Watkins will receive from other employment during that time. Mr. Watkins has the burden of proving these damages by a preponderance of the evidence.

[If you find that Mr. Watkins is entitled to recovery of future earnings from the Board, then you must reduce any award by the amount of the expenses that Mr. Watkins would have incurred in making those earnings.]

You must also reduce any award to its present value by considering the interest that Mr. Watkins could earn on the amount of the award if he made a relatively risk-free investment.  You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Mr. Watkins if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mr. Watkins can earn interest on it for the period of time between the date of the award and the date he would have earned the money.

So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Watkins can earn on that amount in the future.

**Comment**

There is no right to jury trial under Title VII for a claim for front pay.  <u>See</u> <u>Pollard v. E. I. du Pont de Nemours & Co.</u>, 532 U.S. 843 (2001) (holding that front pay under Title VII is not an element of compensatory damages).

An instruction on front pay is nonetheless included  because the parties or the court may wish to empanel an advisory jury–especially given the fact that in most cases the plaintiff will be seeking compensatory damages and the jury will be sitting anyway.  See Fed. R.Civ.P. 39(c).

**<u>See</u> Model Jury Charge 5.4.4**

## 1.7  Title VII Damages - Nominal Damages

If you return a verdict for Mr. Watkins, but Mr. Watkins has failed to prove actual injury and therefore is not entitled to compensatory damages, then  you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury.  Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

**See** Bailey v. Runyon, 220 F.3d 879, 882 (8th Cir. 2000); Pryer v. C.O. 3 Slavic, 251 F.3d 448, 452 (3d Cir. 2001).

Nominal damages may not exceed one dollar.  See Mayberry v. Robinson, 427 F.Supp. 297, 314 (M.D.Pa. 1977) (citing U. S. ex rel. Tyrrell v. Speaker, 535 F.2d 823, 830 (3d Cir. 1976)("It is clear that the rule of law in the Third Circuit is that nominal damages may not exceed $1.00."))

**See Model Jury Charge 5.4.5**

# 42 U.S.C. § 1981
# Claims

A claim under Section 1981 can be brought against an individual as well as the employer.  Therefore a plaintiff might bring a retaliation claim not only against the employer but also against the employee who took the allegedly retaliatory action.

**2.1 Section 1981 provides as follows:**

(a)  Statement of equal rights

All persons within the jurisdiction of the United States shall have the same rights in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)  Definition

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

c)  Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

In order for Henry Watkins to establish his claim against the defendants, Mr. Watkins has the burden of proving by a preponderance of the evidence that the defendants had a discriminatory purpose or motive in that defendants' actions were,

more likely than not, motivated by Mr. Watkins' race.[1]

In order for the Mr. Watkins to recover on his claim against the defendants, the plaintiff Henry Watkins must prove that the defendants intentionally discriminated against him. That is, Mr. Watkins' race must be proven to have been a motivating factor in defendants' decision not to promote and/or terminate Mr. Watkins.

Direct evidence would include statements showing a discriminatory motivation for the defendants' treatment of the Mr. Watkins. Indirect or circumstantial evidence would include proof of a set of circumstances sufficient to create a reasonable inference that race was a motivating factor in the defendants' treatment of Mr. Watkins.

Your verdict must be for Henry Watkins and against the defendants if all the following have been proved by a preponderance of the evidence:

First: The defendants suspended and/or terminated Mr. Watkins; and

Second: Mr. Watkins' race was a motivating factor in the defendants' decision.

The mere fact that Mr. Watkins is an African American, was suspended and/or was terminated is not sufficient, in and of

---

[1]    **See Patterson v. McLean Credit Union**, **491 U.S. 164, 186-87 (1989)**.

itself, to establish Mr. Watkins' claim under the law.

If either of the above elements has not been proved by a preponderance of the evidence, you must decide in favor of the defendants and you do not have to consider the plaintiffs' claim any further.

"Motivating factor" means that the evidence must show that, but for plaintiff's race, Mr. Watkins would not have been suspended and/or terminated.  The phrase "motivating factor" does not mean that it was the only motivation for the defendants' decision to suspend and/or terminate Mr. Watkins.  However, it must have been a factor that actually led to the decision.

In showing that Mr. Watkins' race was a motivating factor, Mr. Watkins is not required to prove that his race was the sole motivation or even the primary motivation for defendants decision. Mr. Watkins need only prove that race played a significant part in the defendants' decision even though other factors may also have motivated defendants.

*[Defendants claim that even if race were a motivating factor in defendant's decision, defendants would have taken the same action concerning Mr. Henry Watkins in the absence of the unlawful motive.]*

If you find that the defendants would have, more likely than not, made the same employment decision not to promote and/or to

terminate Mr. Watkins even if the unlawful motive was not present, you should so indicate on the verdict form.

## 2.2  Elements of a Section 1981 Claim — Retaliation

The legal standards for a retaliation claim under Section 1981 are the same as those applicable to a Title VII retaliation claim. See, e.g., Cardenas, 269 F.3d at 263; Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII.").

Henry Watkins claims that the defendants discriminated against him because of Mr. Watkins' prior complaint of discrimination in 1993.

To prevail on this claim, Mr. Watkins  must prove all of the following by a preponderance of the evidence:

First: Mr. Watkins complained of racial discrimination. **The parties stipulated that Mr. Watkins filed such a claim in 1993. Thus, you may consider this element of Mr. Watkins' Section 1981 retaliation claim satisfied.**

Second: Mr. Watkins was subjected to an adverse tangible employment action at the time, or after, the protected conduct took place.

Third: There was a causal connection between the tangible employment action and Mr. Watkins' termination and/or lack of promotion.

Fourth:  Concerning the second element, a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Fifth: Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is, the defendants' action followed shortly after they became aware of Mr. Watkins 1993 claims. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Watkins or a change in demeanor toward Mr. Watkins.

Ultimately, you must decide whether Mr. Watkins' 1993 claim of race discrimination had a determinative effect on defendants' decision to suspend, and ultimately, to terminate Mr. Watkins. "Determinative effect" means that if not for Mr. Watkins' 1993 claim, the defendants' decision to suspend and/or to terminate Mr. Watkins would not have occurred.

<u>**See**</u> **Model Jury Charge 6.1.6**

**2.3    Section 1981 Damages — Punitive Damages**

Henry Watkins may not recover punitive damages against the Board or Mr. Jones in his official capacity or Mr. Bukata in his official capacity.  See generally Evans v. Port Auth. of N.Y. and N.J., 273 F. 3d 346, 356-57 (3d Cir. 2001).

Henry Watkins claims the acts of Willie E. Jones and Michael Bukata, in their individual capacities, were done with malice or reckless indifference to Mr. Watkins' federally protected rights and that as a result there should be an award of what are called "punitive" damages.  **Mr. Jones and Mr. Bukata deny that claim.**  A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future.  [Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury, and so receives nominal rather than compensatory damages.]

**For Individual Defendant:**

[An award of punitive damages is permissible against Mr. Jones and/or Mr. Bukata in this case only if you find by  a preponderance of the evidence that Mr. Jones and/or Mr. Bukata personally acted with malice or reckless indifference to Mr. Watkins' federally protected rights.  An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway.  An action is with reckless indifference if taken with knowledge that it may violate the law.]

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish Mr. Jones and/or Mr. Bukata.  You should also consider whether actual damages standing alone are sufficient to deter or prevent Mr. Jones and/or Mr. Bukata from again performing any wrongful acts that may have been performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Mr. Jones and/or Mr. Bukata may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which Mr. Jones and/or Mr. Bukata should be punished for the wrongful conduct at issue in this case, and the degree to which an award of one sum or another will deter Mr. Jones and/or Mr. Bukata or others from committing similar wrongful acts in the future.

[The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular

amount will adequately deter or prevent future misconduct, may depend upon a defendant's financial resources. Therefore, if you find that punitive damages should be awarded against Mr. Jones and/or Mr. Bukata, you may consider the financial resources of each in fixing the amount of such damages.][1]

**Comment**

In <u>Johnson v. Ry. Express Agency, Inc.</u>, 421 U.S. 454, 460 (1975), the Supreme Court held that a plaintiff in a Section 1981 action is entitled to punitive damages "under certain circumstances." Unlike Title VII, which places caps on punitive damage awards, there is no such statutory cap for Section 1981 actions.

<u>**See**</u> **Model Jury Charge 6.4.2**

---

[1]    <u>**See**</u> **<u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559, 575 (1996).**

**2.4  Section 1981 Definitions - Hostile or Abusive Work Environment**

This is identical to Title VII charge.

**See** **Model Jury Charge 6.2.2**

**2.5  Section 1981 Damages - Compensatory Damages - General Instruction**

This is identical to Title VII charge.

**See** **Model Jury Charge 6.4.1**

**2.6  Section 1981 Damages - Back Pay - For Advisory or Stipulated Jury**

This is identical to Title VII charge.

**See** **Model Jury Charge 6.4.3**

**2.7  Section 1981 Damages - Front Pay - For Advisory or Stipulated Jury**

This is identical to Title VII charge.

**See** **Model Jury Charge 6.4.4.**

**2.8  Section 1981 Damages - Nominal Damages**

This is identical to Title VII charge.

<u>See</u> **Model Jury Charge 6.4.5**

## 3.1   Section 1983 Introductory Instruction

Henry Watkins is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal statutory rights under color of state law.

**<u>See</u> Model Jury Charge 4.1**

## 3.2   Section 1983 — Elements of Claim

Henry Watkins must prove both of the following elements by a preponderance of the evidence:

First: Mr. Jones and/or Mr. Bukata acted under color of state law.

Second: While acting under color of state law, Mr. Jones and/or Mr. Bukata deprived Mr. Watkins of a federal statutory right.

I will now give you more details on action under color of state law, after which I will tell you the elements Mr. Watkins must prove to establish the violation of his federal statutory right.

See <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980); <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).

<u>See</u> **Model Jury Charge 4.3**

## 3.3  Section 1983 — Action under Color of State Law — Action under Color of State Law Is Not in Dispute

**Version A** (government official):

Because Mr. Jones and/or Mr. Bukata were officials of the Board, which was an Agency of the Commonwealth of Pennsylvania at the relevant time, I instruct you that they were acting under color of state law. In other words, this element of Mr. Watkin's claim is not in dispute, and you must find that this element has been established.

**However, you must also take note that the claims against Mr. Jones and Mr. Bukata are claims in their individual capacities, although acting under color of state law.**

**See Model Jury Charge 4.4.1**

**3.4  Section 1983 – Damages – Compensatory Damages**

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Mr. Jones, in his individual capacity and/or Mr. Bukata, in his individual capacity, should be held liable.

If you find Mr. Jones, in his individual capacity and/or Mr. Bukata, in his individual capacity, liable, then you must consider the issue of compensatory damages.  You must award Mr. Watkins an amount that will fairly compensate him for any injury he actually sustained as a result of Mr. Jones', in his individual capacity and/or Mr. Bukata's, in his individual capacity, conduct.

Mr. Watkins must show that the injury would not have occurred without Mr. Jones', in his individual capacity and/or Mr. Bukata's, in his individual capacity, act or omission. Mr. Watkins must also show that Mr. Jones, in his individual capacity and/or Mr. Bukata's, in his individual capacity act or omission played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Mr. Jones', in his individual capacity

and/or Mr. Bukata's, in his individual capacity, act or omission. [There can be more than one cause of an injury. To find that Mr. Jones, in his individual capacity and/or Mr. Bukata's, in his individual capacity, act or omission caused Mr. Watkin's injury, you need not find that Mr. Jones, in his individual capacity and/or Mr. Bukata's, in his individual capacity, act or omission was the nearest cause, either in time or space. However, if Mr. Watkins' injury was caused by a later, independent event that intervened between Mr. Jones', in his individual capacity and/or Mr. Bukata's, in his individual capacity, act or omission and Mr. Watkins' injury, Mr. Jones, in his individual capacity and/or Mr. Bukata's, in his individual capacity, is not liable unless the injury was reasonably foreseeable by Mr. Jones, in his individual capacity and/or Mr. Bukata, in his individual capacity.[1]

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

Mr. Watkins claims the following items of damages

● Emotional and mental harm to Mr. Watkins during and after the events at issue, including mental anguish, and any such emotional and mental harm that Mr. Watkins is reasonably

---

[1]    See Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004).

certain to experience in the future.[2]

[Each plaintiff has a duty under the law to "mitigate" his or her damages – that means that the plaintiff must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendant.  It is Mr. Jones', in his individual capacity and/or Mr. Bukata's, in his individual capacity, burden to prove that Mr. Watkins has failed to mitigate.  So if Mr. Jones, in his individual capacity and/or Mr. Bukata, in his individual capacity, persuades you by a preponderance of the evidence that Mr. Watkins failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Watkins' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.]


[In assessing damages, you must not consider attorney fees or the costs of litigating this case.  Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.]

<u>See</u> **Model Jury Charge 4.8.1**

---

[2]      <u>Bolden v. SEPTA</u>, 21 F.3d 29, 36 (3d Cir. 1994).

**3.5   Section 1983 — Damages — Nominal Damages**

If you return a verdict for Mr. Watkins, but Mr. Watkins has failed to prove compensatory damages, then you must award nominal damages of $ 1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if [he/she] suffered no actual injury.  Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

See Carey v. Piphus, 435 U.S. 247, 266 (1978); see also Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000); Atkinson v. Taylor, 316 F.3d 257, 265 n.6 (3d Cir. 2003).

**See Model Jury Charge 4.8.2.**

**3.6  Section 1983 — Damages — Punitive Damages**

In addition to compensatory or nominal damages, you may consider awarding Mr. Watkins punitive damages.  A jury may award punitive damages to punish a defendant, or to deter the defendant(s) and others like the defendant(s) from committing such conduct in the future.[1] [Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury and so receives nominal rather than compensatory damages.]

You may only award punitive damages if you find that Mr. Jones, in his individual capacity and/or Mr. Bukata in his individual capacity, acted maliciously or wantonly in violating Mr. Watkin's federally protected rights.  [In this case there are multiple defendants.  You must make a separate determination whether each defendant acted maliciously or wantonly.]

- A violation is malicious if it was prompted by ill will or spite towards the plaintiff.  A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the plaintiff in a manner he knows to be unlawful.  A conscious desire to perform the physical acts that caused plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that a defendant had a conscious desire to violate rights or injure plaintiff unlawfully.

---

[1]    <u>Memphis Comm. Sch. Dist</u>, 477 U.S. at 306 n.9.

- A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights.

If you find that it is more likely than not that Mr. Jones in his individual capacity and/or Mr. Jones in his individual capacity acted maliciously or wantonly in violating Mr. Watkin's federal rights, then you may award punitive damages [against that defendant][2].    However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.  But remember that you cannot award punitive damages unless you have found that Mr. Jones in his individual capacity and/or Mr. Bukata in his individual capacity acted maliciously or wantonly in violating Mr. Watkin's federal rights.

If you have found that Mr. Jones in his individual capacity and/or Mr. Bukata in his individual capacity acted maliciously or wantonly in violating Mr. Watkin's federal rights, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of federal rights, or to deter the defendant and

---

[2]    See Hopkins v. City of Wilmington, 615 F. Supp. 1455, 1465 (D. Del. 1985).

others like the defendant from doing similar things in the future,
or both.  Thus, you may consider whether to award punitive damages
to punish Mr. Jones in his individual capacity and/or Mr. Bukata in
his individual capacity.  You should also consider whether actual
damages standing alone are sufficient to deter or prevent Mr. Jones
in his individual capacity and/or Mr. Bukata in his individual
capacity from again performing any wrongful acts he may have
performed.  Finally, you should consider whether an award of
punitive damages in this case is likely to deter other persons from
performing wrongful acts similar to those Mr. Jones in his
individual capacity and/or Mr. Bukata in his individual capacity
may have committed.

        If you decide to award punitive damages, then you should also
consider the purposes of punitive damages in deciding the amount of
punitive damages to award.  That is, in deciding the amount of
punitive damages, you should consider the degree to which Mr. Jones
in his individual capacity and/or Mr. Bukata in his individual
capacity should be punished for his wrongful conduct, and the
degree to which an award of one sum or another will deter the
defendants or others from committing similar wrongful acts in the
future.
        In considering the purposes of punishment and deterrence, you
should consider the nature of the defendant's action.  For example,

you are entitled to consider [whether a defendant's act was violent or non-violent; whether the defendant's act posed a risk to health or safety; whether the defendant acted in a deliberately deceptive manner; and whether the defendant engaged in repeated misconduct, or a single act.]  You should also consider the amount of harm actually caused by the defendant's act, and the harm that could result if such acts are not deterred in the future.

[The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources.  Therefore, if you find that punitive damages should be awarded against Mr. Jones in his individual capacity and/or Mr. Bukata in his individual capacity, you may consider the financial resources of Mr. Jones in his individual capacity and/or Mr. Bukata in his individual capacity in fixing the amount of such damages.][3]

**See** **Model Jury Charge 4.8.3**

---

[3]  <u>BMW of N. Am., Inc.</u>, 517 U.S. at 575; <u>Keenan v. City of Phila.</u>, 983 F. 2d 459 (3d Cir. 1992), Judge Higginbotham argued that when an individual defendant will be indemnified by his or her government employer, the plaintiff should be required to submit evidence of the individual defendant's net worth in order to obtain punitive damages.

**4.1  Civil Conspiracy**

Mr. Watkins alleges that the Board, Mr. Jones in his individual and official capacities and Mr. Bukata in his individual and official capacities entered into a conspiracy to discriminate against Mr. Watkins.

An agency, however, cannot conspire with itself,[1] the only applicable exception to this rule is when the individual agents act in "pursuit of their own interests and not for the benefit" of the entity.[2] Therefore, you may only return a verdict against Mr. Jones and Mr. Bukata in their individual capacities if you find that Mr. Watkins, has shown each of the following by a preponderance of the evidence:

1) two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose;

2) there was an overt act done in pursuance of the common purpose;

3) Mr. Watkins suffered actual legal damage;[3] and

---

[1]  See e.g. Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 473 (Pa. 1979)(finding no conspiracy between an individual shareholder and the corporation); Rutherford v. Presbyterian-Univ. Hosp., 612 A.2d 500, 508 (Pa. Super. Ct. 1992)(holding that "agents of a single entity cannot conspire among themselves").

[2]  See Pursel v. Parkland Sch. Dist., 40 Pa.D.&C.4th 129, 140 (2005)(citing Castle v. Crouse, 2004 WL 257389, *5 (E.D.Pa. Feb. 11, 2004)).

[3]  See McKeenan v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

4)   Mr. Jones and/or Mr. Bukata were acting in pursuit of
     their own interests, and not for the benefit of the
     Board.