IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

HENRY WATKINS,

    Plaintiff,

v.

PENNSYLVANIA BOARD OF
PROBATION & PAROLE,
EDWARD JONES, and MICHAEL BUKATA,

    Defendants.

NO. 02-CV-2881

## JOINT STIPULATIONS OF FACT

Plaintiff and Defendants, by their respective attorneys, on this 6th day on July, 2007, hereby stipulate to the following facts:

A.    <u>The Claims</u>

1.    Plaintiff, Henry Watkins ("Mr. Watkins"), asserts the following claims against the Pennsylvania Board of Probation and Parole (the "Board"), Willie E. Jones (improperly pled as Edward Jones) ("Mr. Jones") and Michael Bukata ("Mr. Bukata") (collectively the "Defendants"):

| Count | Claim | Defendants |
|---|---|---|
| I | Discrimination concerning alleged contractual relationship under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 | The Board<br>Mr. Jones *(official/individual)*<br>Mr. Bukata *(official/individual)* |
| V | Hostile Work Environment under Title VII | The Board<br>Mr. Jones *(official)*<br>Mr. Bukata *(official)* |

2.    The Defendants deny violating any of these laws.

683833_2

B.     The Parties

3.     The Board is an independent agency of the Commonwealth of Pennsylvania. It has the statutory authority to parole and reparole, and commit and recommit offenders, who are sentenced to a maximum of two or more years and violate the terms of their sentence.

4.     The Board maintains its central office or headquarters in Harrisburg, Pennsylvania.

5.     The Board is organized into several different regions and districts.

6.     At all relevant times, Thomas Costa (caucasian) served as the Director of the Eastern Region of the Board.

7.     The Philadelphia District of Board is divided into separate divisions and each division is further divided into units.

8.     Mr. Jones (caucasian) is employed by the Board as a District Director for the Board's Philadelphia District. He has held that position since April of 1997. As District Director, Mr. Jones is one of the individuals responsible for the Philadelphia District.

9.     Mr. Bukata (caucasian) was employed by the Board as a Deputy District Director. As a Deputy District Director, Mr. Bukata was in charge of the Northwest Division of the Philadelphia District from March 1997 to January 9, 2004, when he retired.

10.    Mr. Watkins, (African American), worked for the Board from October 1973 until August 2001. The Board hired Mr. Watkins as a Parole Agent in October 1973.

11.    The Board promoted Mr. Watkins to the position of Parole Supervisor in 1998.

12.    As a supervisor, Mr. Watkins was a member of the American Federation of State, County and Municipal Employees, a labor union which was party to a collective bargaining agreement with the Board.

13. Beginning in July 1999, Mr. Bukata became Mr. Watkins' direct supervisor. Mr. Jones supervised Mr. Bukata. Mr. Watkins supervised a unit of parole agents in the Northwest division.

14. Parole agents are the Board employees who have direct contact with the offenders and monitor the offenders' compliance with their parole terms.

15. The Board terminated Mr. Watkins' employment on August 3, 2001.

C.   General Facts

16. In addition to filing a lawsuit like this one, an employee, like Mr. Watkins, could challenge any discipline action taken by the Board by: (a) filing a grievance pursuant to the collective bargaining agreement; (b) submitting a complaint to the Board's affirmative action officer, Ms. LeDelle Ingram (African American); and/or (c) filing a complaint with the Pennsylvania Civil Service Commission (an entity separate from the Board) pursuant to 71 Pa. Cons. Stat. § 741.95(a) (1989).

17. Periodically, the Board reassigns census tracts from one unit to another if it is determined that one unit has more parolees than another unit.

18. Mr. Watkins agrees that it is his responsibility to manage the workload in his unit among his agents.

19. When Mr. Watkins became a supervisor, the Board assigned Dierdra Gardner ("Ms. Gardner") to serve as the clerical support person for Mr. Watkins' unit.

20. Unfortunately, Ms. Gardner suffered a non-work related injury that made her unable to perform her job.

21. For a period during Ms. Gardner's absence, the Board did not assign a clerical support person to work directly for Mr. Watkins' unit.

22. Ms. Ramona Alexander was Mr. Bukata's secretary.

23. Ms. Alexander sat approximately 300 to 400 feet away from Mr. Watkins on the same floor.

24. Mr. Watkins had telephone and email access to Ms. Alexander.

25. Mr. Watkins and his agents would "put all the work in [their] box in [their] unit and on occasion [Ms. Alexander] would come back and pick it up unless it was an emergency."

26. Approximately one year after Ms. Gardner was first unable to work due to her injury, Mr. Jones assigned Brenda Yarborough ("Ms. Yarborough") to work as Mr. Watkins' unit secretary.

27. Mr. Watkins describes Ms. Yarborough as "a good secretary" and "very professional."

28. Ms. Yarborough worked for Mr. Watkins' unit until the Board terminated Mr. Watkins' employment.

29. Stuart Greenberg (caucasian) was a supervisor who was also supervised by Mr. Bukata.

D. Discipline of Mr. Watkins

30. Mr. Watkins supervised Lloyd Knight (African American), a parole agent in his unit.

31. As part of his supervisory duties, Mr. Watkins was required to conduct an employee performance review (EPR) for Mr. Knight.

32. On April 18, 2000, Mr. Bukata conducted a PDC with Mr. Watkins concerning Agent Knight's EPR and safety equipment issues.

33. Following the April 18, 2000 PDC, a written reprimand was issued to Mr. Watkins.

34. Mr. Watkins received a one day suspension following a PDC on June 21, 2000.

35. On October 5, 2000, Mr. Bukata conducted a PDC with Mr. Watkins.

36. Following the October 5, 2000, PDC, a three day suspension was imposed on Mr. Watkins.

37. Mr. Watkins grieved this discipline through his Union.

38. Mr. Marshall (African American) heard Mr. Watkins' grievance.

39. Mr. Watkins contends that Mr. Rich and his union were ineffective and/or did not pursue the grievance.

40. The Board denied the grievance.

41. Leave slips are Board forms prepared, in part, by an employee who is requesting time off from work.

42. Supervisors, like Mr. Watkins, are required to review and approve these requests and forward them to the Board's timekeeper so that the Board has accurate records of the leave time available for its employees.

43. Consequently, on November 16, 2000, Mr. Bukata conducted a PDC with Mr. Watkins for failing to process requests for leave from his agents.

44. Following the November 11, 2000 PDC, a five day suspension was imposed on Mr. Watkins.

45. Mr. Watkins grieved this discipline through his Union.

46. Mr. Marshall (African American) heard Mr. Watkins' grievance.

47. Mr. Watkins contends that Mr. Rich and his union were ineffective and/or did not pursue the grievance.

48. The Board denied the grievance.

49. On July 5, 2001, Mr. Bukata conducted a PDC with Mr. Watkins.

50. Following the July 5, 2001 PDC, Mr. Watkins' employment was terminated.

51. Mr. Watkins did not challenge his termination through the grievance process, the Board's affirmative action office or the civil service commission. He filed this lawsuit.

683833_2

5

E.   Mr. Watkins' Job Search

52.  After his termination, Mr. Watkins looked at jobs available at City Hall.

53.  Although Mr. Watkins cannot recall the jobs that were available at City Hall, he did not believe any of the City Hall jobs to be "appropriate" based on his age, education and prior position.

54.  Mr. Watkins did not apply for any jobs that were posted on any internet websites including the sites for a historically black college, the US Government, and Monster.com.

55.  At the time of Mr. Watkins' deposition, April 3, 2003, he intended to apply for a job at the Warrant Service Unit for Philadelphia.

56.  As of April 3, 2003, Mr. Watkins had gone to a job fair "last year" "somewhere downtown", but he did not apply for any jobs.

57.  Mr. Watkins subscribes to the Philadelphia Inquirer and looks at the employment listings every Sunday.

58.  Mr. Watkins has never applied for any jobs listed in the Philadelphia Inquirer.

59.  At the time of Mr. Watkins' deposition, April 3, 2003, he intended to apply for a position with Delaware State University.

60.  Mr. Watkins also testified that he was considering returning to school to enhance his credentials. Id. at 290.

61.  Mr. Watkins, as recently as July of 2006, stated his efforts to obtain employment were:

> Watkins has continually reviewed the want-ads in the newspaper and on the internet in an attempt to find employment in his field. He has also networked with business associates and contacts in order to try to find a position. Watkins has not been offered any position. Watkins is now in the exploratory/planning stages of opening his own business.

62.  Mr. Watkins' job duties as a Supervisor with the Board included reviewing reports, assigning caseloads, conducting conferences with employees and clients, developing

sanctions for clients, working closely with employees to develop their skills, answering the telephone, taking telephone messages, making referrals over the telephone, training new employees, assisting agents in making contacts with clients, evaluating the performance of agents, taking urine samples, preparing weekly overtime reports, maintaining contacts with the neighborhood and local police.

63. Mr. Watkins testified that he looked at employment advertisements for positions involving social work with the Government, and with the Warrant Service Unit in Philadelphia.

64. Mr. Watkins has not provided the Board with any application or documentation of any kind concerning his job search.

Respectfully submitted,

DILWORTH PAXSON LLP

By: _____
GINO J. BENEDETTI, ESQUIRE
Attorney I.D. Nos. 59584
1735 Market Street
3200 Mellon Bank Center
Philadelphia, PA 19103
(215) 575-7000

Attorneys for Defendants

SUGARMAN & ASSOCIATES

By: _____
ROBERT J. SUGARMAN, ESQUIRE
Robert Morris Building
100 North 17th Street
11th Floor
Philadelphia, PA 19103
(215) 575-7000

Attorneys for Plaintiff