IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HENRY WATKINS,

        Plaintiff,

    v.

PENNSYLVANIA BOARD OF
PROBATION & PAROLE,
EDWARD JONES, and MICHAEL BUKATA

        Defendants.

:
:   NO. 02-CV-2881
:
:
:
:
:
:
:
:
:
:

## DEFENDANTS' PROPOSED AMENDED JURY INSTRUCTIONS

Defendants, Pennsylvania Board of Probation and Parole ("the Board"), Willie E. Jones ("Mr. Jones") (improperly pled as Edward Jones), and Michael Bukata ("Mr. Bukata"), by their attorneys, Dilworth Paxson LLP, respectfully submit these proposed amended jury instructions. The defendants have amended the jury instructions that they filed on August 22, 2006 (Docket No. 77) based upon the Court's summary judgment ruling of August 16, 2006 (Docket No. 69) dismissing plaintiff's retaliation and conspiracy claims.

### INTRODUCTORY CHARGE

In this case, Mr. Watkins alleges that the Board, Mr. Jones and Mr. Bukata treated him differently at work because he is African American. Each of those defendants deny Mr. Watkins' claims. The defendants assert that, despite their efforts to train and counsel Mr. Watkins, he continued to perform poorly.

700383_1

**TABLE OF CONTENTS**

<u>Charge</u>                                                                                                           <u>Page</u>

1.   Title VII – Individual v. Official Capacity Liability...............................................3

2.   Elements of a Title VII and §§ 1981 and 1983 Claims  – Disparate Treatment
     pretext ................................................................................................................4

3.   Elements of a Title VII and §§ 1981 and 1983 Harassment Claims - Hostile Work
     Environment - Tangible Employment Action..................................................... 6

4.   Section 1983 Introductory Instruction ........................................................... 10

5.   Section 1983 - Elements of Claim .................................................................. 11

6.   Section 1983 - Action under Color of State Law –  Action under Color of State
     Law Is Not in Dispute ..................................................................................... 12

7.   Compensatory Damages – General Instruction .............................................. 13

8.   Back pay- For Advisory or Stipulated Jury .................................................... 18

9.   Front Pay – For Advisory or Stipulated Jury ................................................. 20

10.  Nominal Damages............................................................................................ 22

11.  Punitive Damages ............................................................................................ 23

**42 U.S.C. § 2000E**
**TITLE VII CLAIMS**

1.    **Title VII – Individual v. Official Capacity Liability**

There is no individual liability under Title VII, but an employee may be sued in his "official capacity". See In Re Montgomery, 215 F.3d 367, 373 (3d Cir. 2000). Therefore, you may only consider claims under Title VII against Mr. Jones and Mr. Bukata in their official capacities. See Watkins v. Pa. Bd. of Prob. and Parole, 2002 WL 32182088, at *10 (E.D.Pa. Nov. 25, 2002). An official capacity lawsuit is no different than a lawsuit against the state itself, as it is not a claim against the individual, but against the individual's office. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, when considering whether Mr. Watkins has proven his claims under Title VII, you will only consider his claims against the state agency and the offices held by Mr. Jones and Mr. Bukata.

2.    **Elements of a Title VII and §§ 1981 and 1983 Claims – Disparate Treatment pretext[1]**

In this case Henry Watkins is alleging that he was treated differently from white employees in the same position as him, Parole Agent Supervisor, based on his race, African American. **The defendants contend that their actions were legitimate and justified and not based on race.**

In order for Mr. Watkins to recover on this discrimination claim against the defendants, Mr. Watkins must prove that the Board and/or Mr. Jones, in his official capacity, and/or Mr. Bukata, in official capacity, (the "Defendants" ) intentionally discriminated against him. This means that Mr. Watkins must prove that his race was a determinative factor in the defendants' decision to treat white employee(s) disparately from Mr. Watkins.

To prevail on this claim, Mr. Watkins must prove both of the following by a preponderance of the evidence:

> First: Defendants suspended and/or terminated plaintiff; and
>
> Second: Mr. Watkins' protected status was a determinative factor in the defendants' decision.

Although Mr. Watkins must prove that the defendants acted with the intent to discriminate, Mr. Watkins is not required to prove that the defendants acted with the particular intent to violate his federal civil rights. Moreover, Mr. Watkins is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

Defendants have given a nondiscriminatory reason for their decision to suspend, and, ultimately, to terminate Mr. Watkins. If you disbelieve the defendants' explanations for their

---

[1] This instruction is to be used when the plaintiff's proof of discrimination is circumstantial rather than direct. See Comment to Instruction 5.1.1.

conduct, then you may, but need not, find that Mr. Watkins has proved intentional discrimination. In determining whether the defendants' stated a pretext, or excuse, discrimination, you may not question the defendants' business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of the defendants or believe it is harsh or unreasonable.[2] You are not to consider the defendants' wisdom. However, you may consider whether the defendants' reason is merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Watkins has proven[3] that his race was a determinative factor[4] in the defendants' decision to suspend, and, ultimately, to terminate Mr. Watkins. "Determinative factor" means that if not for Mr. Watkins' race, he would have been promoted and/or would not have been terminated.

**See Model Jury Charge 5.1.2**

---

[2] See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991).

[3] A plaintiff in a Title VII case always bears the burden of proving whether the defendant intentionally discriminated against the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993). See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 347 n.1 (3d Cir. 1999).

[4] See Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000).

3.     **Elements of a Title VII and §§ 1981 and 1983 Harassment Claims - Hostile Work Environment - Tangible Employment Action**

Henry Watkins claims that he was subjected to harassment by the Board, Mr. Jones, in his official capacity, and Mr. Bukata, in his official capacity and that this harassment was motivated by Mr. Watkins' race. **The defendants contend that their actions were legitimate and justified and not based on race.** The defendants are liable for the actions of Mr. Jones and Mr. Bukata in Mr. Watkins' claim of harassment if Mr. Watkins proves all of the following elements by a preponderance of the evidence:

First: Mr. Watkins was subjected to discrimination by the Board and/or Mr. Jones and/or Mr. Bukata.

Second: The Board's and/or Mr. Jones' and/or Mr. Bukata's conduct was not welcomed by Mr. Watkins.

Third: Mr. Jones and Mr. Bukata's conduct was motivated by the fact that Mr. Watkins is an African American, and/or because of his prior claim against the Board for race discrimination.[5]

Fourth: The conduct was so severe or pervasive that a reasonable person in Mr. Watkins' position would find Mr. Watkins' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable African American's reaction to Mr. Watkins' work environment.[6]

Fifth: Mr. Watkins' believed his work environment to be hostile or abusive as a result of Mr. Jones' and/or Mr. Bukata's conduct.[7]

Sixth: Mr. Watkins suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.[8]

---

[5] See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 2006). (1998); Jensen v. Potter, 435 F. 3d 444, 447 (3d Cir. 2006).

[6] See Harris v. Forklift Sys., 510 U.S. 17, 22 (1993); see Jensen 435 F.3d 444 at n. 3.

[7] See Harris, 510 U.S. at 21.

[8] See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

An adverse employment action "is one which is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"[9] A significant change in employment status is a "hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits."[10] A written reprimand is not adverse employment actions when it does not change or alter a condition of employment.[11]

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

- The total physical environment of Mr. Watkins' work area.

- The degree and type of language and insult that filled the environment before and after Mr. Watkins' arrived.

- The reasonable expectations of Mr. Watkins upon entering the environment.

- The frequency of the offensive conduct.[12]

- The severity of the conduct.

- The effect of the working environment on Mr. Watkins' mental and emotional well-being.

- Whether the conduct was unwelcome, that is, conduct Mr. Watkins regarded as unwanted or unpleasant.

- Whether the conduct was pervasive.

- Whether the conduct was directed towards Mr. Watkins.

- Whether the conduct was physically threatening or humiliating.

- Whether the conduct was merely a tasteless remark.

---

[9] See Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.2d 1286, 1300 (3d Cir. 1997)).

[10] Weston v. Pa., 251 F.3d 420, 431 (3d Cir. 2001) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998)).

[11] See Weston, 251 F.3d at 431.

[12] See Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998).

- Whether the conduct unreasonably interfered with Mr. Watkins' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Watkins was harassed because of his race, African American. The harassing conduct may, but need not be racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race. The key question is whether Mr. Watkins, as an African American, was subjected to harsh employment conditions to which non-African American employees were not.

It is important to understand that, in determining whether a hostile work environment existed at the Board you must consider the evidence from the perspective of a reasonable African American in the same position.[13] That is, you must determine whether a reasonable African American would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable African American. The reasonable African American is

---

[13] Hurley v. A.C.P.D., 174 F.3d 95, 115-17 (3d Cir. 1999).

simply one of normal sensitivity and emotional make-up. <u>See</u>, <u>e.g.</u>, <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 (3d Cir. 1997).


**<u>See</u> Model Jury Charge 5.1.4 and 5.2.1**

4.     **Section 1983 Introductory Instruction**

Henry Watkins is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal statutory rights under color of state law.

<u>See</u> **Model Jury Charge 4.1**

**5.      Section 1983 - Elements of Claim**

Henry Watkins must prove both of the following elements by a preponderance of the evidence:

> First: Mr. Jones and/or Mr. Bukata acted under color of state law.

> Second: While acting under color of state law, Mr. Jones and/or Mr. Bukata deprived Mr. Watkins of a federal statutory right.

I will now give you more details on action under color of state law, after which I will tell you the elements Mr. Watkins must prove to establish the violation of his federal statutory right.

See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Groman v. Twp. Of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

**See Model Jury Charge 4.3**

6.     **Section 1983 - Action under Color of State Law –**
       **Action under Color of State Law Is Not in Dispute**

**Version A** (government official):

Because Mr. Jones and/or Mr. Bukata were officials of the Board, which was an Agency of the Commonwealth of Pennsylvania at the relevant time, I instruct you that they were acting under color of state law. In other words, this element of Mr. Watkin's claim is not in dispute, and you must find that this element has been established.

**However, you must also take note that the claims against Mr. Jones and Mr. Bukata are claims in their individual capacities, although acting under color of state law.**

**See Model Jury Charge 4.4.1**

7.      **Compensatory Damages – General Instruction**

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the defendants should be held liable.

If you find by a preponderance of the evidence that one, some or all of the defendants intentionally discriminated against Henry Watkins by suspending and/or terminating Mr. Watkins, then you must consider the issue of compensatory damages. You must award Mr. Watkins an amount that will fairly compensate him for any injury he actually sustained as a result of the defendants' conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Watkins in the position he would have occupied if the discrimination had not occurred. Mr. Watkins has the burden of proving damages by a preponderance of the evidence.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

Mr. Watkins must show that the injury would not have occurred without the defendants' act or omission. Mr. Watkins must also show that the defendants' act or omission played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the defendants' act or omission. This test - a substantial part in bringing about the injury - is to be distinguished from the test you must employ in determining whether the defendants' actions or omissions were motivated by discrimination. In other words, even assuming that the defendants' actions or omissions were motivated by discrimination, Mr. Watkins is not entitled to damages for an injury unless the defendants' discriminatory actions or omissions actually played a substantial part in bringing about that injury.

There can be more than one cause of an injury. To find that the defendants' act or omission caused Mr. Watkins' injury, you need not find that the defendants' act or omission was the nearest cause, either in time or space. However, if Mr. Watkins' injury was caused by a later, independent event that intervened between the defendants' act or omission and Mr. Watkins' injury, the defendants are not liable unless the injury was reasonably foreseeable by the defendants.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Watkins experienced as a consequence of the defendants' allegedly unlawful act or omission. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Watkins would have earned, either in the past or in the future, if he had continued in employment with the Board. These elements of recovery of wages that Mr. Watkins would have received from the Board are called "back pay" and "front pay". [Under the applicable law, the determination of "back pay" and "front pay" is for the court.] ["Back pay" and "front pay" are to be awarded separately under instructions that I will soon give you, and any amounts for "back pay" and "front pay" are to be entered separately on the verdict form.]

You may award damages for monetary losses that Mr. Watkins may suffer in the future as a result of the defendants' allegedly unlawful act or omission. [For example, you may award damages for loss of earnings resulting from any harm to Mr. Watkins' reputation that was suffered as a result of the defendants' allegedly unlawful act or omission. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Mr. Watkins would have earned in the future from the Board if he had retained the job.

As I instructed you previously, Mr. Watkins has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Watkins prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

You are instructed that Mr. Watkins has a duty under the law to "mitigate" his damages-- that means that Mr. Watkins must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendants. It is the defendants' burden to prove that Mr. Watkins has failed to mitigate. So if the defendants persuade you by a preponderance of the evidence that Mr. Watkins failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Watkins' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**See** **Model Jury Charge 5.4.1**

**Comment**

Title VII distinguishes between disparate treatment and disparate impact discrimination and only allows recovery of compensatory damages to those who suffered intentional discrimination. 42 D.S.C.A. § 1981a(a)(1).

*Cap on Damages*

The Civil Rights Act of 1991 (42 D.S.C. §1981a) provides for compensatory damages and a right to jury for disparate treatment violations. But it also imposes a statutory limit on the amount of compensatory damages that can be awarded. See 42 D.S.C. §1981a (b)(3) :

> **Limitations.** The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party-
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $ 300,000.

42 D.S.C. §1981a(c)(2) provides that the court shall not inform the jury of the statutory limitations on recovery of compensatory damages.

*No Right to Jury Trial for Back Pay and Front Pay*

Back pay and front pay are equitable remedies that are to be distinguished from the compensatory damages to be determined by the jury under Title VII. See the Comments to Instructions 5.4.3 -4. Compensatory damages may include lost future earnings over and above the front pay award.

The pattern instruction contains bracketed material that would instruct the jury not to award back pay or front pay. The jury may, however, enter an award of back pay and front pay as advisory, or by consent of the parties. In those circumstances, the court should refer to instructions 5.4.3 for back pay and 5.4.4 for front pay. In many cases it is commonplace for back pay issues to be submitted to the jury. The court may think it prudent to consult with counsel on whether the issues of back pay or front pay should be submitted to the jury (on either an advisory or stipulated basis) or is to be left to the court's determination without reference to the jury.

*Damages for Pain and Suffering*

In Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1121-22 (3d Cir.1988), the Court held that under 42 D.S.C. § 1981 and Title VII, a plaintiff cannot recover pain and suffering damages without first presenting evidence of actual injury. The court stated that "[t]he justifications that support presumed damages in defamation cases do not apply in § 1981 and Title VII cases. Damages do not follow of course in § 1981 and Title VII cases and are easier to prove when they do."

*Attorney Fees and Costs*

There appears to be no uniform practice regarding the use of an instruction that warns the jury against speculation on attorney fees and costs. The Third Circuit has not spoken on the propriety or necessity of such an instruction. Bracketed material is included for a court to use if it is concerned about jury speculation on attorney fees and costs. See Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000), and Brooks v. Cook, 938 F.2d 1048, 1051 (9th Cir. 1991), for concerns expressed about instructions involving attorney fees.

8.      **Back pay- For Advisory or Stipulated Jury**

If you find that one, some, or all of the defendants intentionally discriminated against Henry Watkins by failing to promote and/or terminating him, then you must determine the amount of damages that the defendants' actions have caused Mr. Watkins. Mr. Watkins has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Watkins for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Watkins would have received from the Board had Mr. Watkins not been the subject of the defendants' intentional discrimination.

Back pay damages, if any, apply from the date of **Mr. Watkins'** termination until the date of your verdict. [However, federal law limits a plaintiff's recovery for back pay to a maximum of a two year period before the plaintiff filed his discrimination charge with the Equal Opportunity Employment Commission. Therefore the back pay award in this case must be determined only for the period between **August 3, 2001** the present].

You must reduce any award by the amount of the expenses that Mr. Watkins would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mr. Watkins has obtained from other employment during this period. However, please note that you security benefits, unemployment compensation and pension benefits from an award of back pay.

You are further instructed that Mr. Watkins has a duty to mitigate his damages--that is Mr. Watkins is required to make reasonable efforts under the circumstances to reduce his damages. It is the defendants' burden to prove that Mr. Watkins has failed to mitigate. So if the defendants persuade you, by a preponderance of the evidence, that Mr. Watkins failed to obtain

substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of the wages that Mr. Watkins reasonably would have earned if he had obtained those opportunities.

See 42 U.S.C. § 1981 (b) (2); Fed.R.Civ.p. 39 (c); Gunby, 840 F.2d at 1119-20; 42 U.S.C. § 2000e-5(g); See Albemarle Paper v. Moody, 422 U.S. 405, 410 n.3. (1975) Bereda v. Pickerinq Creek Indus. Park, Inc., 865 F.2d 49, 54 (3d Cir. 1989); Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995); Ellis v. Ringgold Sch. Dist., 832 F.2d 27, 29 (3d Cir. 1987); Anastasio v. Schering Corp., 838 F.2d 701,707-08 (3d Cir. 1988); Tubari Ltd., Inc. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992); Ford Motor Co. v. EEOC, 458 U.S. 219, 231¬32 (1982).


**See Model Jury Charge 5.4.3**

9.    **Front Pay – For Advisory or Stipulated Jury**

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Watkins would reasonably have earned from the Board had Mr. Watkins not been terminated for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Watkins will receive from other employment during that time. Mr. Watkins has the burden of proving these damages by a preponderance of the evidence.

[If you find that Mr. Watkins is entitled to recovery of future earnings from the Board, then you must reduce any award by the amount of the expenses that Mr. Watkins would have incurred in making those earnings.]

You must also reduce any award to its present value by considering the interest that Mr. Watkins could earn on the amount of the award if he made a relatively risk-free investment. You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Mr. Watkins if he receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because Mr. Watkins can earn interest on it for the period of time between the date of the award and the date he would have earned the money. So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Watkins can earn on that amount in the future.

**Comment**

There is no right to jury trial under Title VII for a claim for front pay. See Pollard v. E.I. duPont de Nemours & Co., 532 U.S. 843 (2001) (holding that front pay under Title VII is not an element of compensatory damages).

An instruction on front pay is nonetheless included because the parties or the court may wish to empanel an advisory jury-especially given the fact that in most cases the plaintiff will be seeking compensatory damages and the jury will be sitting anyway. See Fed. R.Civ.P. 39(c).

<u>See</u> Model Jury Charge 5.4.4

10.    **Nominal Damages**

If you return a verdict for Mr. Watkins, but Mr. Watkins has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

See Bailey v. Runyon, 220 F.3d 879, 882 (8th Cir. 2000); Pryer v. C.O. 3 Slavic, 251 F.3d 448, 452 (3d Cir. 2001).

Nominal damages may not exceed one dollar. See Mayberry v. Robinson, 427 F. Supp. 297, 314 (M.D. Pa. 1977) (citing U.S. ex rel. Tyrrell v. Speaker, 535 F.2d 823, 830 (3d Cir. 1976) (lilt is clear that the rule of law in the Third Circuit is that nominal damages may not exceed $1.00."))


See **Model Jury Charge 5.4.5**

11.    **Punitive Damages**

**Henry Watkins may not recover punitive damages against the Board or Mr. Jones in his official capacity or Mr. Bukata in his official capacity.** <u>See generally</u> <u>Evans v. Port Auth. of N.Y. and N.J.</u>, 273 F. 3d 346, 356-57 (3d Cir. 2001).

Henry Watkins claims the acts of Willie E. Jones and Michael Bukata, in their individual capacities, were done with malice or reckless indifference to Mr. Watkins' federally protected rights and that as a result there should be an award of what are called "punitive" damages. **Mr. Jones and Mr. Bukata deny that claim.** A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future. [Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury, and so receives nominal rather than compensatory damages.]

**For Individual Defendant:**

[An award of punitive damages is permissible against Mr. Jones and/or Mr. Bukata in this case only if you find by a preponderance of the evidence that Mr. Jones and/or Mr. Bukata personally acted with malice or reckless indifference to Mr. Watkins' federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.]

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Mr. Jones and/or Mr. Bukata. You should also consider whether actual damages standing alone are sufficient to deter

or prevent Mr. Jones and/or Mr. Bukata from again performing any wrongful acts that may have been performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Mr. Jones and/or Mr. Bukata may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Mr. Jones and/or Mr. Bukata should be punished for the wrongful conduct at issue in this case, and the degree to which an award of one sum or another will deter Mr. Jones and/or Mr. Bukata or others from committing similar wrongful acts in the future.

[The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular

amount will adequately deter or prevent future misconduct, may depend upon a defendant's financial resources. Therefore, if you find that punitive damages should be awarded against Mr. Jones and/or Mr. Bukata, you may consider the financial resources of each in fixing the amount of such damages.][14]

**Comment**

In <u>Johnson v. Ry. Express Agency, Inc.</u>, 421 U.S. 454, 460 (1975), the Supreme Court held that a plaintiff in a Section 1981 action is entitled to punitive damages "under certain

---

[14] See **BMW of N. Am., Inc. v. Gore**, 517 U.S. 559, 575 (1996).

circumstances." Unlike Title VII, which places caps on punitive damage awards, there is no such statutory cap for Section 1981 actions.

**See** **Model Jury Charge 6.4.2**

Respectfully submitted,

Dilworth Paxson LLP

By: _____

GINO J. BENEDETTI, ESQUIRE
Attorney I.D. Nos. 59584
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
(215) 575-7000
Attorney for Defendants,
Pennsylvania Board of Probation and Parole,
Willie E. Jones, and Michael Bukata

Dated:  November 28, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Proposed Amended Jury Instructions has been served upon the following counsel this 28th day of November, 2007, via First Class Mail and Electronic Court Filing:

Robert Sugarman, Esquire
Robert Morris Building – 11th Floor
100 N. 17th St.
Philadelphia, PA 19103


Gino J. Benedetti, Esquire
Attorney I.D. No.: 59584
**DILWORTH PAXSON LLP**

Dated: November 28th, 2007