IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY WATKINS, | : | |
| Plaintiff, | : | NO.   02-CV-2881 |
| v. | : | |
| PENNSYLVANIA BOARD OF PROBATION & PAROLE, EDWARD JONES, and MICHAEL BUKATA, | : | |
| Defendants. | : | |

### DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE OF THE 2003 AUDITOR GENERAL REPORT

Defendants, the Pennsylvania Board of Probation and Parole (the "Board"), Willie E. Jones (improperly pled as Edward Jones) ("Mr. Jones") and Michael Bukata ("Mr. Bukata") (collectively the "Defendants"), by and through their attorneys, Dilworth Paxson LLP, respectfully submit this Motion in Limine to Preclude Evidence of the 2003 Auditor General Report. In support thereof, Defendants will rely on the accompanying Memorandum of Law, which is incorporated herein by reference.

Respectfully submitted,

DILWORTH PAXSON LLP

By: _____
GINO J. BENEDETTI, ESQUIRE
ECF No.: GJB320
3200 The Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595
(215) 575-7000

Dated: May 12, 2008

Attorney for Defendants,
Pennsylvania Board of Probation &
Parole, Willie E. Jones and Michael Bukata

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY WATKINS, | : | |
| | : | NO.   02-CV-2881 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION & PAROLE, | : | |
| EDWARD JONES, and MICHAEL BUKATA, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO PRECLUDE EVIDENCE OF THE 2003 AUDITOR GENERAL REPORT**

Defendants, the Pennsylvania Board of Probation and Parole (the "Board"), Willie E. Jones (improperly pled as Edward Jones) ("Mr. Jones") and Michael Bukata ("Mr. Bukata") (collectively the "Defendants"), by and through their attorneys, Dilworth Paxson LLP, respectfully submit this Memorandum of Law in Support of Defendants' Motion in Limine to Preclude Evidence of the 2003 Auditor General Report including the Board's response thereto.

**I.     STATEMENT OF FACTS**

Trial is scheduled to begin on May 13, 2008. On May 8, 2008, Plaintiff Henry Watkins ("Mr. Watkins") requested a copy of the April 2003 Performance Audit of the Board prepared by then Auditor General Robert R. Casey (the "AG Report"). That same day the Defendants provided Mr. Watkins with a copy of the AG Report including the Boards' response which is a part of the AG Report. See Exhibit 1 (AG Report with transmittal letter).

After-hours on May 9, 2008, Mr. Watkins submitted his exhibit list to Defendants identifying two hundred and thirty-nine exhibits. Mr. Watkins plans on providing the

Defendants with copies of those Exhibits on May 12, 2008. He lists the AG Report and the Board's Response as two separate trial exhibits (P228 and 229)[1].

None of the witnesses identified by the parties is a representative of or custodian for the Auditor General's office.

The Report concerns the Board's general practices and procedures across Pennsylvania. This case concerns only the Board's Philadelphia District. The Auditor General Report does not address whether the Board treats its employees differently based on their race. The Report is irrelevant, untrustworthy, contains inadmissible double hearsay, and is unduly prejudicial.

For each of these reasons, the Defendants respectfully request that the AG Report, and any mention of it, should be precluded at trial.

## II.   LEGAL ARGUMENT

### A.   The Report Should Be Precluded Because It Is Irrelevant to Mr. Watkins' Claims

As with all evidence, to be admissible at trial, a government report must be relevant to the underlying matter. See Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.") See also Fed. R. Evid. 401 (defining relevant evidence as that which has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Thus, it is axiomatic that a report that is not relevant is not admissible. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168-69 (1988) ("[S]afeguards built into other portions of the Federal Rules, such as those dealing with relevance . . . provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them.")

---

[1]   The AG Report includes the Board's Response. Defendants' counsel incorrectly informed Plaintiff's counsel that the AG Report and Board Response were separate documents.

Here, the Report itself has nothing at all to do with race or with Mr. Watkins' claims. Indeed, the Report does not at all concern the Board's treatment of its African American employees as compared to its Caucasian employees. See generally Exhibit 1 (AG Report). Instead, in the Report, the Auditor General makes conclusions concerning the Board's general monitoring and training of all its parole agents and the caseload assigned to all those agents across Pennsylvania. See, e.g., Exhibit 1 (AG Report), at i-viii, 1-6.

True, the Board disciplined Mr. Watkins (and others) for failing to monitor cases and Mr. Watkins claims a discriminatory lack of training. The AG Report, however, offers no probative value on those issues.

Only twelve (12) of the one hundred twenty-six pages (126) of the AG Report concern case monitoring. In those pages, the Auditor General concluded that the Board was deficient in supervising paroled prisoners. See Exhibit 1 at 30-44. That conclusion is based upon a fifty (50) case sampling from across the Commonwealth, although the Board provided the Auditor General with a list of two thousand, nine hundred seventy-five (2,975) offenders from a total of twenty-four thousand (24,000) offenders the Board managed. See Id; See Also Exhibit 1 (Board's Response) at 1-2, 7-14.

Similarly, on training, the Auditor General concluded that eleven unidentified agents had deficient training. See Exhibit 1 at 91-99; Board's Response at 17-18 (emphasizing opposition and depth of training)[2]. Thus, admission of the Auditor General Report does not have the tendency to make more probable Mr. Watkins' claim that the Board disciplined him because of his race.

---

[2] Nearly all of the AG Report concerns issues that are not even arguably relevant to the issue of whether the Board discriminated against Mr. Watkins on the basis or race. See, e.g., Exhibit 1 at 22-30 (concluding that the Board failed to create employment opportunities for parolees); 56-63 (concluding that the Board failed to collect court-ordered payments from parolees); 82-88 (concluding that the Board failed to evaluated recidivism data); 99-105 (concluding that the Board failed to properly implement annual firearm training).

B.   **The Report Should Be Precluded Because It Does Not Meet the Public Report Hearsay Exception under The Federal Rules of Evidence**

Federal Rule of Evidence 803(8)(c) provides an exception to the hearsay rule for reports of public offices or agencies setting forth factual findings resulting from an investigation made pursuant to authority granted by law as follows:

> **Rule 803.   Hearsay exceptions; Availability of Declarant Immaterial**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> **(8)   Public Records and Reports**. Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings ...., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8) (bolding in original). Thus, conclusions and opinions contained in a government report are admissible pursuant to Rule 803 only when the report: (a) is made pursuant to legal authority; and (b) is sufficiently trustworthy. See Fed. R. Evid. 803(8); Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 (1988) ("[T]he trustworthiness provision [of Rule 803(8)] requires the court to make a determination as to whether the report, or any portion thereof, is sufficiently trustworthy to be admitted."); Complaint of Nautilus Motor Tanker Corp., Ltd., 85 F.3d 105, 112 (3d Cir. 1996) ("[A]ny portion of [a] report that is admitted must be sufficiently trustworthy."). Notably, the United States Supreme Court has specifically stated that "a trial judge has the discretion and, indeed, the obligation, to exclude an entire report or portions thereof whether narrow 'factual' statements or broader 'conclusions' that she determines to be untrustworthy." Beech Aircraft, 488 U.S. at 167.

The trustworthiness of a report "focuses on the methodology behind the report." See Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1307-08 (5th Cir. 1991). "Review of the trustworthiness of the report includes, but is not limited to, factors such as '1) timeliness of the investigation; 2) the investigator's skill and experience; 3) whether a hearing was held; and 4) possible bias when reports are prepared with a view to possible litigation.'" Seeney v. Community Action Agency of Delaware County, Inc., 1998 WL 306585, at *1 (E.D. Pa. Jun. 9, 1998) (quoting Beech Aircraft, 488 U.S. at 167); see also Eason v. Fleming Companies, Inc., 1993 WL 13015208, at *3 (5th Cir. Aug. 24, 1993) ("[T]he party opposing the admissibility of a government report must demonstrate that it was compiled utilizing methods that cannot be relied upon[.]"); Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 238-39 (5th Cir. 1988) (looking at reliability in the processes of compiling the evidence in determining whether evidence is trustworthy); Gibson v. County of Riverside, 181 F. Supp. 2d 1057, 1070 (C.D. Cal. 2002) (considering methodology upon which county report is based to determine trustworthiness of report).

Here, as an initial matter, it is questionable that the Auditor General has the legal authority to conduct a performance audit of the Board. Compare Department of the Auditor General v. Pennsylvania State Police, 844 A.2d 78, 80 (Pa. Commw. Ct. 2004) (refusing to issue a declaratory judgment directing the Pennsylvania State Police (PSP) to provide the Auditor General with access to certain investigative information without first considering whether the Auditor General has the authority to conduct a performance review of the PSP's compliance with a statute requiring registration of certain sex offenders). Thus, the Auditor General Report does not necessarily satisfy Rule 803's requirement that it be conducted pursuant to authority granted

by law. See Fed. R. Evid. 803(8) (excluding government reports from hearsay rule when they are, *inter alia*, "made pursuant to authority granted by law").

Additionally, the Auditor General Report is untrustworthy because no hearing was held concerning the report. Thus, the Board had no meaningful opportunity to present evidence to the Auditor General concerning the facts upon which the report is based.[3] See Seeney, 1998 WL 306585, at *2 (granting defendant's motion in limine seeking to exclude report conducted by the Pennsylvania Bureau of Affirmative Action and Contract Compliance when "there was no hearing associated with the PBAACC's investigation [and] therefore [defendant] had no opportunity to present evidence or cross-examine witnesses").

Further still, the methodology upon which the Auditor General based its findings is unreliable. Specifically, of the list of 2,975 offenders the Board provided the Auditor General concerning the audit, the Auditor General selected only 50 offender files to review and audit. See Exhibit 1 (Auditor General Report), at 6-7. Thus, the data upon which the Auditor General relied to support its findings represents only 0.2 percent of the Board's total caseload.[4] Id.; see also Gibson, 181 F. Supp. 2d at 1070 (in age discrimination in housing suit, chart containing survey results necessary to defend senior citizen zoning was inadmissible on the ground that, *inter alia*, the method by which the questionnaires were distributed undermined the report's trustworthiness).

Moreover, to comply with the Pennsylvania Criminal History Record Information Act ("CHRIA"), the Board was forced to heavily redact the offenders' files that it provided the

---

[3] While the Board did have the opportunity to respond in writing to the Auditor General Report, that opportunity did not arise until after the conclusions in the report had been made. See Response of the Board of Probation and Parole to the Performance Audit Conducted by the Pennsylvania Department of the Auditor General (Appendix A to AG Report) (Exhibit 1).

[4] The Board's total caseload at the time was comprised of approximately 24,000 offenders. See Exhibit 1 (AG Report) at 1, 36.

6

Auditor General. See 18 Pa. C.S. § 1901 et seq. See also Opitz v. Bowman, 42 Pa. D.&C. 4th 405, 407 (1999) (describing CHRIA as prohibiting the dissemination of certain information concerning an individual's criminal activity). The Auditor General was therefore not privy to a full and complete review of the offenders' files upon which it relied in support of the conclusions it sets forth in the Auditor General Report.

The Auditor General Report is therefore not sufficiently trustworthy to warrant admission at trial.

### C. The Report Is Inadmissible Because It Is Based Upon Double Hearsay

Even when a court finds a report sufficiently trustworthy to meet the hearsay exception pursuant to Rule 803(8) of the Federal Rules of Evidence, it may still be excluded if it contains impermissible hearsay within hearsay, or "double hearsay." See Fed. R. Evid. 801(c) (defining hearsay as a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted"); Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."); see also United States v. DePeri, 778 F.2d 963, 976-77 (3d Cir. 1985) (excluding statements made in report conducted by the Federal Bureau of Investigations as "a classic 'hearsay within hearsay' problem"). In other words,

> [i]f the factual findings in the public document themselves are based upon hearsay, then the underlying hearsay also must fit within an exception to the general hearsay rule for the public document to be admissible. Fed. R. Evid. 805. Therefore, whenever public documents are offered into evidence, the first inquiries always should be whether the factual findings in the public documents rest upon hearsay and, if so, whether that hearsay is excepted from the general hearsay rule.

Fraley v. Rockwell Int'l Corp., 470 F. Supp. 1264, 1267 (S.D. Ohio 1979).

7

Here, the conclusions set forth in the AG Report are based upon impermissible double hearsay and, therefore, are inadmissible. Specifically, a majority of the information upon which the Auditor General bases its conclusions comes from redacted records concerning 50 offenders under the Board's supervision. See Exhibit 1 at 6. Notably, those records include information that was provided directly from the offenders to Board Parole Agents and subsequently transcribed by the Parole Agents into the relevant offender's records. Such information constitutes double, and arguably triple, hearsay.

Additionally, in support of its conclusions, the Auditor General relies on a wide variety of third-party sources including, but not limited to:

1. various information obtained from the American Correctional Institution's website, see id., at 9, 122;

2. articles appearing in various publications including, *inter alia*, Prison Journal, Corrections Today, Public Opinion, Crime & Criminal Justice, see id., at 11, 15, 57;

3. an evaluation of Pennsylvania's parole violators conducted by the Vera Institute of Justice, see id. at 122; and

4. a handbook concerning local policy development from the Center for Effective Public Policy, see id. at 123.

Thus, because the conclusions set forth in the Report are based upon impermissible double hearsay, the conclusions may not be admitted into evidence.

D. **The Auditor General Report Should Be Precluded Because Introduction of The Report Would Result In Substantial Prejudice to The Defendants**

The United States Supreme Court has specifically stated that, for government reports to be admissible, they must satisfy Rule 403 of the Federal Rules of Evidence. See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Thus, it is well within the discretion of the trial court to exclude a report when its probative value is outweighed by the danger of unfair prejudice, confusion of issues or undue delay. See, e.g., Bright v. Firestone Tire & Rubber Co., 756 F.2d 19, 23 (6th Cir. 1984) ("Even if the requirements of 803(8)(c) were met, the District Court would still have discretion to exclude the report under Rule 403 if its probative value was substantially outweighed by the danger of unfair prejudice."); Complaint of Munyan, 143 F.R.D. 560, 564 n.3 (D.N.J. 1992) ("[W]here the probative value of a report is outweighed by the danger of unfair prejudice, confusion of issues or undue delay, waste of time or needless presentation of cumulative evidence the court may exclude the report under [Rule] 403.").

To determine whether evidence should be precluded pursuant to Rule 403, the court must balance the prejudicial effect of the evidence against its likely probative value. See, e.g., Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 538 (3d Cir. 1996) ("Rule 403 requires that a court balance the prejudicial effect of proposed evidence against its probative value."); United States v. Krenzelok, 874 F.2d 480, 482 (7th Cir. 1989) ("The balancing of probative value and prejudicial effect, like other comparisons of intangibles, requires an exercise of judgment rather than a computation."). Notably, "a trial judge is given very substantial discretion when striking a Rule 403 balance." United States v. Eufrasio, 935 F.2d 553, 572 (3d Cir. 1991), cert. denied, 502 U.S. 925 (1991) (internal quotations omitted); see also Bright v. Firestone Tire & Rubber Co., 756 F.2d 19, 23 (6th Cir. 1984) ("Even if the requirements of Rule 803(8)(c) [are] met, the District Court would still have discretion to exclude [a] report under Rule 403 if its probative value was substantially outweighed by the danger of unfair prejudice.")

9

Applying this balancing test, the United States Court of Appeals for the Sixth Circuit in Bright found that the district court did not abuse its discretion in excluding the excerpts from a report conducted by the House of Representatives Subcommittee that the plaintiff sought to introduce into evidence, which concerned an allegedly defective tire manufactured by the defendant. See Bright, 756 F.2d at 23. In so finding, the Court reasoned as follows:

> The probative value of the report in this case is minimal. Showing that the public generally had more problems with the Firestone 500 tire than with other tires does not prove that the particular tire involved in this case was defective, and has nothing to do with whether a tire defect caused this particular accident. Moreover, the district court found that 'much of [the proposed evidence] could really be argued on the basis of what's already in evidence and on the reasonable inferences that might be drawn from those facts that are in evidence.' There was a substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth. It would be extremely difficult and time-consuming to evaluate the report's trustworthiness by examining all the data upon which it was based. The report also contains extraneous criticisms of Firestone that might have swayed the jury although not necessarily relevant to the case.

Bright, 756 F.2d at 23.

Here, like the report in Bright, the AG Report:

1.  has little, if any, probative value to Mr. Watkins' race discrimination claims;

2.  makes general conclusions regarding the Board's monitoring and training of all its parole agents, see, e.g., Exhibit 1 (Auditor General Report), at i-viii, 1-6, 30-40, 88-95;

3.  is based upon data, which would require a difficult and time-consuming review to determine its trustworthiness; and

4.  contains extraneous criticisms of the Board's practices and performance that could sway the jury but are irrelevant to Mr. Watkins' case, see, e.g., Exhibit 1 at 45-56

(concluding that Board sanctioned parolees ineffectively), 64-69 (concluding that the Board inadequately enforced parolee and probationer court-ordered payments to victims).

Thus, there is substantial danger that admission of the AG Report would unfairly prejudice Defendants. Because this prejudice outweighs the minimal probative value of the report, the Auditor General Report should be precluded.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion in Limine and preclude Plaintiff from introducing and/or relying at trial upon the AG Report or any part of it.

Respectfully submitted,

DILWORTH PAXSON LLP

By: _____
GINO J. BENEDETTI, ESQUIRE
ECF No.: GJB520
3200 The Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595
(215) 575-7000

Dated: May 12, 2008

Attorney for Defendants,
Pennsylvania Board of Probation &
Parole, Willie E. Jones and Michael Bukata

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Motion In Limine to Preclude Evidence of the 2003 Auditor General Report has been served on this date upon the following individuals and in the manner indicated below:

### VIA ECF NOTIFICATION AND HAND DELIVERY

Gerald J. Williams, Esquire
Williams Cuker & Berezofsky
One Penn Center
1617 JFK Boulevard
Philadelphia, PA 19103

### VIA ECF NOTIFICATION AND FIRST CLASS MAIL

Jordan B. Yeager, Esquire
Boockvar & Yeager
8 West Oakland Avenue
Doylestown, PA 18901

By: _____/GJB320
GINO J. BENEDETTI, ESQUIRE

Date: May 12, 2008

12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY WATKINS, | : | |
| | : | NO.   02-CV-2881 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION & PAROLE, | : | |
| EDWARD JONES, and MICHAEL BUKATA, | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, on this _____ day of _____ 2008, upon consideration of Defendants' Motion in Limine, and any opposition thereto, it is hereby ORDERED that Defendants' Motion is GRANTED and that Plaintiff is precluded from referring to, using at trial or entering into evidence any evidence concerning the April 2003 Performance Audit of the Pennsylvania Board of Probation and by the Parole Auditor General including the Board's response thereto.

BY THE COURT:

_____
J.